No. 19,492.

THE STATE OF KANSAS, *Appellee*, V. EDWARD BROWN-ING, *Appellant*.

SYLLABUS BY THE COURT.

PROSECUTION—*Cruelty to Animals—Several Counts in Information—Error Not to Require State to Elect Transaction Relied Upon for Conviction Under Each Count*.  In a prosecution for cruelty to animals upon an information containing many counts and where testimony was introduced tending to prove several distinct and substantive offenses on each charge it is the duty of the court, upon the motion of the defendant, to require the state to elect upon which act or omission it will rely for a conviction on each count, and the overruling of the motion made by defendant herein is held to be reversible error.

Appeal from Brown district court; WILLIAM I. STUART, judge.  Opinion filed March 6, 1915.  Reversed

*S. L. Ryan,* and *C. W. Ryan,* both of Hiawatha, for the appellant.

*S. M. Brewster,* attorney-general, *John L. Hunt,* assistant attorney-general, and *W. E. Archer,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:    Edward Browning was prosecuted upon an information containing twelve counts charging him with not properly caring for live stock owned by him.  Four of the counts alleged cruelty to his live stock during the months of October, November and December, 1913, and January, 1914, respectively, by confining them in a dark, damp and unclean place; four counts alleged failure to provide food, drink and shelter, and the four remaining counts failure to provide sustenance, during the same months respectively. The information did not set out the specific days of each month on which the alleged offenses were com-

mitted, and defendant's motions that the information be made more definite and certain in this respect and for the state to elect the particular counts upon which it would prosecute were overruled.    The court instructed the jury that the four sustenance counts were duplicative and that they should, therefore, be disregarded.    The jury found defendant guilty of cruelty in keeping the animals in an unclean and unfit place on one count, and of the failure to supply food, drink and shelter upon three others.    Defendant's motion for a new trial was overruled, and he appeals.

The motion of the defendant to require an election by the state upon what particular transactions it would rely for a conviction on each of the offenses charged against him should have been sustained.    The information, as we have seen, contained twelve counts charging what purported to be twelve distinct offenses. Upon a ruling made when the court instructed the jury four of the counts were eliminated on the ground that the acts alleged to have been done by defendant were included in four other counts of the information.    That left four counts, each charging that the defendant had cruelly treated his animals at different times during the period of four months by allowing the bank-barn, where they were kept and confined, to become unclean and unsanitary.    It was charged that at some unnamed day in each month this cruelty was practiced.    The defendant had asked the court to require the state to make the charge more definite as to time and to point out more clearly the transaction in each count, but the request was denied. The defendant was required to meet these charges without any information as to what particular transactions the prosecutor had in mind or upon which convictions were sought, and he was not even informed of the days, weeks or other periods of time in which the different acts of cruelty were supposed to have occurred.    There was the same indefiniteness as to the

The State v. Browning.

four separate charges against defendant for failure
to feed, water and shelter his animals. The informa-
tion alleged that once in each month from October to
January, inclusive, he had committed this offense, but
no day of the month was named and no transaction
was pointed out by the prosecution, and the defendant
therefore had no means of knowing what particular
act or shortcoming was intended to be covered by any
of the counts.

The testimony was equally indefinite as to times and
transactions. Many witnesses testified as to the con-
dition of the barn and also as to the food and care
given the animals and their condition. The evidence
of these witnesses related to a time extending from
October first to the first of the following February,
but most of them were unable to fix, with any cer-
tainty, the times to which they referred and some
could not even give the month of the occurrence. The
defendant was therefore blindly fighting charges of
twelve distinct offenses without any opportunity of
knowing the transaction that was intended to be cov-
ered by any one of the charges until the instructions
were given to the jury, when the court withdrew four
of them. After that the defendant undertook to meet
charges of eight distinct offenses which the court sub-
mitted to the jury, and he still was without means of
knowing what particular act of omission or commission
was relied on for a conviction on any one of the eight
counts. He was convicted on one of the counts which
charged him with inflicting unnecessary cruelty on
animals by keeping them in damp, unsanitary places.
In behalf of the state it is said that at least one con-
viction of this class can be sustained as there is suffi-
cient evidence that the place in which they were kept
was unclean and unfit for the animals. However, a
continuing offense was not charged nor relied on. It
is not a question whether or not testimony enough was

obtained from one and another of the witnesses to support a single conviction, but it is, rather, whether he was given a fair trial of the charge on which the conviction was obtained. Who can tell on what particular act or omission the conviction rests or how many of the jurors agreed that the barn was in an unclean and unsanitary condition at any one of the times about which testimony was given? Fifteen witnesses testified in regard to the condition of the barn at the different times that they observed it during the fall and winter. Some stated that they found large accumulations of manure which were from a foot to fifteen inches in depth at the rear of stalls and that it was damp. Others said they found six inches of manure in some of the stalls at the time they observed the barn. Still others said they found from three to four inches of manure, and that it was dry. Some witnesses testified that the barn was fairly clean and sanitary when they were present, and others that part of it had been cleaned out but that there was manure in one or more of the stalls. There was testimony, too, that it was in the average condition of barns in the community. The testimony tending to support the charge was quite meager and related to different times, but, assuming that portions of it tended to support a conviction, it can not be told how many jurors agreed on any one of the times or periods about which there was testimony.

The same is true as to the charges of cruelty in failing to provide sufficient food, water and shelter for the animals. Many witnesses testified on the subject and spoke of what they had seen. There was little specific proof of any particular dereliction or which related to a failure to care for the animals at any particular times or periods. Most of them related to the condition of the horses when witnesses happened to observe them, that is, the horses were poor in flesh and some of them were weak and a few had died.

However, there was testimony to the effect that a part of the horses were in good condition but that a disease had attacked many of them with the result that some died and those that recovered were necessarily poor and weak for a time. There were convictions on three of the counts charging cruelty of this kind, but the jury must have been entirely at sea so far as the identity of acts or omissions of defendant were concerned and so far as basing any one of the convictions on any particular transaction or omission. It has been determined that where testimony is introduced tending to prove several distinct offenses under a particular count it is the duty of the court, upon application of the defendant, to require the prosecutor to elect upon which transaction he will rely for a conviction. The application of this rule was peculiarly important in this case, and because of the nature of the charges and the character of the evidence the denial of the right was a great disadvantage to the defendant. As was said in *The State v. Crimmins,* 31 Kan. 376, 2 Pac. 574:

"Any other rule would often work injustice and hardship to the defendant. If any other rule were adopted, the defendant might be charged with the commission of one offense, tried for fifty, compelled to make defense to all, be found guilty of an offense for which he had made no preparation and had scarcely thought of, and found guilty of an offense which was really not intended to be charged against him; and in the end, when found guilty, he might not have the slightest idea as to which of the offenses he was found guilty. Also, if evidence was introduced tending to prove twelve or more different offenses, the jury might find him guilty without any two of the jurors agreeing that he was guilty of any particular one of such offenses. One juror might believe that he was guilty of one offense, another juror of another, and so on with respect to all the jurors and all the offenses, each juror believing that the defendant was guilty of some one of the offenses which the evidence possibly tended to prove, but no two jurors agreeing that he was guilty of the same identical offense." (p. 379.)

41—94 KAN.

(See, also, *The State v. Schweiter*, 27 Kan. 499; *The State v. O'Connell*, 31 Kan. 383, 2 Pac. 579; *The State v. Guettler*, 34 Kan. 582, 9 Pac. 200; *The State v. Lund*, 49 Kan. 209, 30 Pac. 518; *The State v. Lund*, 49 Kan. 663, 31 Pac. 309; *The State v. Tanner*, 50 Kan. 365, 31 Pac. 1096; *The State v. Gaunts*, 60 Kan. 660, 57 Pac. 503.)

As the case was tried it was possible for the jurors to have looked over the wide range of indefinite testimony and each have selected as a basis of his judgment for a conviction an act or time which differed from that selected by any other juror, and so while a verdict was agreed upon by the jury it may have been that no two of the jurors founded his judgment of conviction on the same offense.

The judgment will be reversed and the cause remanded for a new trial.