## TERRITORY OF HAWAII *v.* LEOPOLD G. BLACKMAN AND HARVE CARTER.

### No. 2000.

ARGUED MAY 20, 21, 23, 1932.  DECIDED JUNE 24, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The defendants were convicted under an indictment containing two counts. Both counts charged the defendants with the embezzlement of $4,239.53, the property of Mrs. Florence Lillie. The date of the embezzlement was alleged to have been July 2, 1930. The first count charged that the money was converted to the use of the defendant Leopold G. Blackman, and the second count charged that it was converted to the use of the defendant Harve Carter. There was a verdict of guilty as charged against each

of the defendants and each of them was accordingly sentenced to a term of imprisonment at hard labor in the penitentiary for not less than four nor more than ten years. The case is here on writ of error.

The evidence shows that in 1927 Leopold G. Blackman entered the stock brokerage and real estate business in Honolulu in partnership with one Earl Sanderson, under the firm name of Blackman & Sanderson. This partnership continued until about July, 1928, when it was dissolved. On March 19, 1929, Blackman, who was then conducting a stock brokerage business under the name of Blackman & Company, entered into a contract with the defendant Harve Carter, who was at the time managing Blackman & Company's business. Under the terms of this contract each of the parties was to receive an equal salary and whenever Carter desired it he was to become a partner with Blackman, the former to have a forty-nine per cent interest and the latter a fifty-one per cent interest. This arrangement continued until August 15, 1930, when Blackman & Company, being insolvent, closed its doors, and thereafter, on August 21, made a voluntary assignment to Harry S. Hayward. For about a year and a half during the activities of Blackman & Company T. F. McInerny was employed as bookkeeper.

One of the many customers or clients who patronized Blackman & Company was Mrs. Florence Lillie. Mrs. Lillie dealt in various corporate stocks, among which was stock in the Aviation of Delaware and the Exeter Oil Company. Her dealing with the aviation stock began on April 25, 1930, when she purchased through Blackman & Company one hundred shares on margin. Her dealings with Exeter Oil stock were on July 1, 1930, when she ordered Blackman & Company to sell all the stock which she had purchased, including the Aviation of Delaware stock, and after deducting what she owed to the company

on her marginal account to use the balance in the purchase of four thousand shares of Exeter Oil stock.

There was a mass of evidence relating to the dealings of Blackman and Carter with regard to the stock brokerage business in which they were engaged. For reasons that will presently appear much of this evidence need not be considered on this review.

It is contended by the Territory that the evidence tends to show that Blackman, Carter and McInerny entered into a conspiracy to embezzle the money of the clients of Blackman & Company and that as a part of that conspiracy and in furtherance of it McInerny did in fact embezzle money belonging to Mrs. Lillie and that if the jury so believed the verdict against Blackman and Carter was fully justified. That this theory of the case was in the mind of the trial judge is shown by his remarks from the bench. At the conclusion of the Territory's case and after it had rested, the jury having been excused, the trial judge said: "The court wishes light on the proposition of whether or not there is sufficient evidence in this case to show or to go to the jury from which the jury can find that the defendants Carter and Blackman or either of them, together with McInerny, and others, conspired to commit embezzlement and fraudulent conversions of their client's money and stocks at some time in 1929, and that the conspiracy continued down to and included the day on which Blackman and company went out of business, and as a part and parcel of that conspiracy, whether Carter and McInerny, or McInerny, did commit the crime of embezzlement in regard to the money of Mrs. Lillie; and that therefore, if it showed from the evidence whether they could find both Carter and Blackman guilty on the basis that they were conspirators to a conspiracy to embezzle their client's money and property, and the property and money of Mrs. Lillie in the further-

ance and as a part and parcel of that conspiracy. The court would like to have information and light on whether or not there is sufficient evidence in the case to cover that possible theory or not." After making these remarks, and no doubt after a discussion of the question by counsel, the judge evidently concluded that there was sufficient evidence upon which to submit to the jury the question of whether the defendants or either of them was guilty of the crime charged upon the theory of a conspiracy. This is shown by instructions to the jury. For instance, two of the instructions given are as follows: "You are instructed if you believe from the evidence beyond a reasonable doubt that the defendants Harve Carter and Leopold G. Blackman, or either of them, together with the witness McInerny or with McInerny and others, conspired to commit embezzlement and fraudulent conversions of their clients' money and stocks at some time in 1929 and that said conspiracy continued down to and including the 18th day of August, 1930, and that, as part and parcel of that conspiracy McInerny did commit the crime of embezzlement in the manner and form set forth in the indictment, of the moneys or stock of Florence Lillie, in an amount in excess of $100.00, on any date within the period of said conspiracy, then it is your duty to find such defendants or defendant so conspiring guilty as charged." "I further instruct you, as a matter of law, that while it is necessary, in order to establish a conspiracy, to prove a combination by two or more persons, by concerted action to accomplish the unlawful purpose, yet it is not necessary to prove that the parties ever entered into any formal agreement or arrangement between themselves to carry out such purpose; the combination, or common design, or object, may be regarded as proved, if the jury believe from the evidence, beyond a reasonable doubt, that the parties charged actually

conspired, pursuing, in concert, the unlawful purpose or object, whether acting separately or togther, providing all were acting for the unlawful purpose of the conspiracy."

One of the contentions made by the defendants regarding these instructions is that they were erroneous because there was in the indictment no charge of a conspiracy. This contention cannot be sustained. It is a well established principle that when there is a conspiracy among several persons to commit a crime, and in its furtherance the crime agreed to be committed is accomplished by one of them, any or all of the conspirators may be charged in an indictment with the crime thus committed and may, upon proper proof, be convicted although the indictment does not allege a conspiracy to commit the crime charged. The evidence which is relied on by the Territory to establish a conspiracy was received in conformity with this principle and the instructions that were given on that subject correctly stated the law in that regard.

In the case of *People* v. *Wilson*, 245 Pac. (Cal.) 781, the defendants were jointly indicted for the crime of burglary. The trial court admitted evidence of a general conspiracy between the two defendants and another to commit robberies in the city of Los Angeles on the theory that the crime charged was committed pursuant to the conspiracy. On page 783 the court discusses this question, saying: "It undoubtedly is the general rule that the evidence must be confined to the issue, and that on a trial for felony the prosecution will not be permitted to give evidence tending to prove the defendant guilty of another distinct and independent crime. There are, however, exceptions to this general rule. Thus the offense of which a defendant stands accused may have been perpetrated in furtherance of a general conspiracy to commit crime. In such cases the character and purpose of

the conspiracy may have a tendency to shed light upon the particular offense charged against the accused. * * * A conspiracy of that character, if it existed, would tend to shed light upon the acts done by appellants in connection with each of the robberies for which they were indicted. Moreover, the defendant McCormick was not present at the scene of the Turkish Baths robbery. To justify his conviction of that crime, it was necessary to establish criminal liability under the general rule that, where several persons conspire or combine together to commit a crime, each is criminally responsible for the acts of his associates or confederates committed in furtherance of the common design." In *State* v. *Kolafa,* 236 S. W. (Mo.) 302, the defendant was indicted for the crime of grand larceny. An accomplice of the defendant testified that the crime charged was committed as the result of a conspiracy between the two. The court rejected the defendant's contention that the evidence was inadmissible, saying (p. 305) : "It was not necessary to allege a conspiracy to commit the crime in order to prove it was committed in pursuance of a conspiracy. The conspiracy was not the crime charged, but an incident to it—the means by which it was accomplished. State v. Carroll, 232 S. W. 702." In *Reed* v. *State,* 46 N. E. (Ind.) 135, the defendant was indicted for the crime of burglary. The trial court admitted evidence of a conspiracy between the defendant and another to commit the crime charged and instructed the jury accordingly. In discussing these instructions the court said (p. 138) : "It is said also that the instructions were erroneous because the indictment did not charge a conspiracy. No reason or authority is assigned for the proposition that one charged, as a principal, with a felony, may not be convicted upon evidence of a conspiracy to commit the crime, and an actual participation in the act constituting the

crime." In the leading case of *Spies* v. *The People,* 122 Ill. 1, in which the defendants were indicted for murder, the following was among the instructions given for the prosecution (p. 79) : "The court further instructs the jury, as a matter of law, that if they believe, from the evidence in this case, beyond a reasonable doubt, that the defendants, or any of them, conspired and agreed together, or with others, to overthrow the law by force, or to unlawfully resist the officers of the law, and if they further believe, from the evidence, beyond a reasonable doubt, that in pursuance of such conspiracy and in furtherance of the common object, a bomb was thrown by a member of such conspiracy at the time, and that Matthias J. Degan was killed, then such of the defendants that the jury believe, from the evidence, beyond a reasonable doubt, to have been parties to such conspiracy, are guilty of murder, whether present at the killing or not, and whether the identity of the person throwing the bomb be established or not." In discussing the above instruction the court said (p. 102) : "It is charged, that the defendants formed a common purpose, and were united in a common design to aid and encourage the murder of the policemen among whom the bomb was thrown. If they combined to accomplish such murder by concerted action, the ordinary law of conspiracy is applicable, and the acts and declarations of one of them, done in furtherance of the common design, are, in contemplation of law, the acts and declarations of all. This prosecution, however, is not for conspiracy as a substantive crime. Proof of conspiracy is only proper, so far as it may tend to show a common design to encourage the murder charged against the prisoners. It may be introduced for the purpose of establishing the position of the members of the combination as accessories to the crime of murder."

It is further contended by the defendant Blackman

that the instructions relating to conspiracy were so far as he was concerned improperly given for the reason that there is no evidence implicating him in a conspiracy. He claims that it is disclosed by the evidence that he was at no time an active participant in the business that was conducted under the name of Blackman & Company, and, more specifically, that he knew nothing of the Aviation of Delaware and Exeter Oil transactions at the time they occurred and took no part whatever in them. In short, he urges that even assuming a conspiracy to embezzle the money and stocks of the clients of Blackman & Company existed, there is no evidence in the case, circumstantial or otherwise, from which the inference can be drawn that he was a party to it, and that therefore the submission of the case on the theory of conspiracy was, at least as to him, error.

In view of the necessity, as will presently appear, of setting aside the verdict of the jury and granting a new trial, we deem it unnecessary to review in detail the evidence relating to a conspiracy. We have no means of knowing whether in the event of another trial the same evidence will be presented as was presented in the trial now under consideration. We therefore think it would be improper to discuss the transactions of Blackman & Company out of which the Territory claims an inference of a conspiracy may reasonably be drawn. We consider it enough for the future guidance of the court below in any further proceedings that may be had on this indictment to say that any competent evidence concerning a conspiracy is admissible and that in the event the evidence which is adduced is sufficient to lead to the reasonable conclusion that a conspiracy in fact existed it is proper for the court to instruct the jury on that subject.

We come now to the question which, as we view it, necessitates the granting of a new trial. The indict-

ment charges but one embezzlement, namely, that of $4,239.53, which is alleged to have been the property of Mrs. Florence Lillie. As we have seen, the Territory introduced evidence of at least two transactions between Mrs. Florence Lillie and Blackman & Company. One of these transactions related to one hundred shares of Aviation of Delaware stock and the other to four thousand shares of Exeter Oil stock. The aviation stock was purchased by Mrs. Lillie through Blackman & Company on April 25, 1930, at a cost of $925. The Territory introduced evidence tending to show that on May 17, 1930, this stock was sold without Mrs. Lillie's consent by T. F. McInerny, the bookkeeper of Blackman & Company, at the direction of the defendant Carter, for the sum of $750 and that the proceeds were credited to the account of Blackman & Company.

Regarding the Exeter Oil stock it appears from the evidence that on July 2, 1930, Mrs. Lillie instructed Blackman & Company to sell various blocks of stock held in her account. This order was executed and the amount realized was $13,885.90. After debiting Mrs. Lillie with the sum of $8,533.42, which she owed on her marginal account, she was credited with the balance of $5,352.48. Mrs. Lillie then instructed Blackman & Company to purchase for her four thousand shares of Exeter Oil stock at the market price of $1.50 per share and to apply the above credit balance on the purchase price. The Territory sought to show by evidence that this order of Mrs. Lillie's was not executed, but on the contrary that the defendants embezzled her credit balance, or such portion of it as amounted to $4,239.53.

It is unnecessary for our present purposes to go into further detail as to these two transactions. It is sufficient to say that the Territory, in the briefs and in the oral argument, urged that there was sufficient evidence on

either or both of them to support the verdict. At the close of the Territory's evidence and after both sides had rested each of the defendants moved the court to require the Territory to elect upon what transaction it relied for a conviction. These motions were denied and an exception duly taken. We think this action of the court was prejudicial error.

It is well settled by judicial precedent that when under an indictment charging a single embezzlement there is evidence tending to prove more than one embezzlement and the several embezzlements sought to be proven are not so interrelated as to constitute one continuing transaction but are so separate and distinct from each other as to time, amount and subject matter that each act is susceptible of proof independently of the others, the prosecution should be required to elect upon which embezzlement it relies for a conviction. The facts before us clearly bring the instant case within this rule. The embezzlement of Aviation of Delaware stock or its proceeds and the embezzlement of Mrs. Lillie's credit balance, which it is claimed by the Territory were committed, involved different amounts, and were committed, if at all, at different times. The subject matter of the two transactions was likewise entirely different and unrelated. One occurred on May 17 and the other on July 2. The former involved $750 and the latter $5,352.48, and they were each susceptible of proof wholly independently of the other. In fact, the evidence adduced by the Territory relating to the Aviation of Delaware stock was distinct from that pertaining to the dealings in Exeter Oil.

In the leading case of *Goodhue* v. *The People,* 94 Ill. 37, the defendant, a county treasurer, was indicted for the crime of embezzlement of $4,508.37. In the course of the trial evidence was given tending to prove at least three different acts of embezzlement, occurring at different

times and under varying circumstances, and involving different amounts. The defendant made a motion for an election which was overruled. The court in discussing the question involved said (p. 51) : "If two or more offences form part of one transaction, and are such in nature that a defendant may be guilty of both, the prosecution will not as a general rule be put to an election, but may proceed under one indictment for the several offences, though they be felonies. The right of demanding an election and the limitation of the prosecution to one offence, is confined to charges which are actually distinct from each other and do not form parts of one and the same transaction. In misdemeanors the prosecution may, in the discretion of the court trying the case, be required to confine the evidence to one offence, or where evidence is given of two or more offences, may be required to elect one charge to be submitted to the jury, but in cases of felony it is the right of the accused, if he demand it, that he be not put upon trial at the same time for more than one offence, except in cases where the several offences are respectively parts of the same transaction. 1 Wharton Crim. Law, § 423; 1 Bishop Crim. Pr. 459. This doctrine is recognized by this court in *Lyons* v. *The People,* 68 Ill. 275, and is believed to accord with the practice in this State from its earliest days. It was therefore error, in this case, to refuse the application of the accused for the benefit of this rule."

In the case of *Edelhoff* v. *State,* 36 Pac. (Wyo.) 627, the defendant was indicted for the crime of embezzlement of the sum of $208.40. The evidence revealed that it was one of the defendant's duties under his employment to collect a monthly rental of $8.75 on a certain house and remit this amount to his employer. It is this rental for each of eighteen months for the embezzlement of which the defendant was indicted. On page 632 the court said :

"In the case at bar there were 18 distinct conversions, at 18 distinct periods, as the false accounting and report that the house was vacant, for which the rent was collected, constituted in itself a conversion and appropriation, and made the offense complete. We do not decide what the effect would have been if the plaintiff in error had been charged with 18 different embezzlements, in separate counts of the indictment, each being a felony under the statute. Such a procedure has been denounced by some courts, and approved by others. The authorities are collected and considered at length on this propostiton in the famous and much criticized case of People v. Liscomb, 60 N. Y., at page 574 et seq. The case at bar presents no such question, but, on the contrary, compels us to decide whether a man may be convicted of 18 distinct felonies when he is charged with but one felony, and whether these separate offenses may be treated as one offense. Although it would appear that the plaintiff in error had not been prejudiced when he has been sentenced to an imprisonment of three years, when the statute permits the imposition of a sentence of 14 years for one distinct offense of embezzlement, and that he might be subjected to a longer term by being tried for 18 offenses upon 18 different indictments, or in 18 counts in one indictment, yet we are unwilling to establish the rule that, where the nature and the cause of the accusation have been specifically confined to one allegation of crime, the defendant may be convicted of more than one crime. It may be possible that, since embezzlement of any property of any value is now a felony, it is not necessary for the jury to ascertain the value of the property embezzled, as directed by section 3317, Rev. St. (McDaniels v. People, 118 Ill. 301, 8 N. E. 687); yet the jury did so, and the verdict was permitted to stand. A verdict of guilty of any of the sums embezzled, at any

of the times proven, we should have held good, as it would have shown that the jury considered but one transaction, and but one offense, and were not influenced by the proof of several distinct acts of embezzlement. That they were influenced by such evidence, and treated these various acts as one offense, is clear, from the record. This was error, and there is no alternative but to grant a new trial of the cause, which, it is due to ourselves to say, is done very reluctantly, and only after this court has been thoroughly convinced that to sustain this verdict would be dangerous to the rights of the citizen. No man should be tried or convicted for several offenses, when he is charged with but one."

In the case of *Storm* v. *Territory*, 94 Pac. (Ariz.) 1099, the defendant was indicted for the embezzlement of a specific sum of public money in his official possession as county treasurer. He had been previously tried and acquitted of a similar charge. At the previous trial the evidence had tended to show distinct appropriations by the defendant at various times. Upon motion by the defendant the Territory had been required to elect which of these would be the basis for the verdict in that case. Thereupon the defendant was indicted for one of the offenses excluded by the election and the jury returned a verdict of guilty. The appeal was partly based on the action of the lower court in overruling the defendant's plea of former jeopardy. In affirming the lower court, the supreme court of Arizona said (p. 1101): "There is nothing in the indictments to distinguish the two charges which we are considering, because neither the amounts charged to be embezzled nor the dates of the misappropriations need to be proved as laid. If Storm misappropriated $1,000 in the year 1902, a second $1,000 in 1903, and a third sum of several thousand dollars in 1904, each of these misappropriations was a separate and distinct

embezzlement. It is unchallengeable that, if he had been indicted and convicted or acquitted for the misappropriation of 1902 prior to the misappropriation in 1903, and after the latter misappropriation had been indicted therefor, his former conviction or acquittal would not be a bar to the prosecution of the latter indictment. Similar conclusions would be reached if, after conviction or acquittal upon this latter indictment, the misappropriation of 1904 and an indictment therefor should follow. We cannot perceive that the result ought to be different if the several indictments are found after all of the misappropriations. This is not a continuing offense, but is one in which each misappropriation is a distinct crime. The fact that all were adduced in evidence at the trial of the first indictment, and that the prosecution could have elected to rely upon the misappropriation of April, 1903, instead of that of November, 1904, ought not in our judgment to bar the prosecution under this second indictment. The court's instruction that, as a matter of law, the evidence does not sustain the pleas of former acquittal or once in jeopardy, was sound."

A compelling reason for requiring an election under the circumstances of this case is that it is impossible to determine from the verdict of the jury upon which transaction the defendants were found guilty. Some of the jurors may have concluded that in their dealings with the Aviation of Delaware stock on May 17 the defendants committed embezzlement and that this was the only embezzlement shown by the evidence. Others may have concluded that there was no embezzlement in that transaction but that the defendants had fraudulently converted Mrs. Lillie's credit balance, or a portion of it, on July 2 and were thus guilty of embezzlement. Such a verdict, lacking as it well may the essential element of unanimity, does not meet with the requirements of the law regarding

a trial by jury and· is insufficient to support a judgment of guilty.

In the case of *People* v. *Hatch,* 109 Pac. (Cal.) 1097, the defendant was indicted for embezzlement. In the course of the trial the prosecution introduced evidence tending to prove more than one embezzlement. The defendant made a motion for an election, which was overruled. In sending the case back for a new trial the court said (p. 1103) : "If there had been but one offense of embezzlement proven by the evidence this charge would have been correct; or if the court had limited the jury in clear and explicit language to the consideration of but one of the offenses proven. But in the case at bar, under the one charge set forth in the indictment several distinct and separate fraudulent appropriations had been proven, and no election had been made as to which was the substantive offense upon which the indictment was predicated. Under this instruction, in the condition of the evidence in the record, the jury could bring in a verdict of guilty as charged, although each juror founded his verdict upon a different offense from that considered proven by every other juror in the box. Under this instruction, the several jurors could range over the evidence at will, and pick out any one of the dozen or more offenses proven, and found his verdict thereon. No court can say from this record of which offense proven under this indictment the jury found the defendant guilty.''

In *Love* v. *State,* 107 So. (Miss.) 667, the defendant was charged with the crime of incest. Evidence of more than one offense was introduced at the trial. The disposition made of this question appears from the following quotation from the court's opinion (p. 668) : "At the conclusion of the evidence the defendant moved the court to require the state to elect on which offense it would

proceed, which motion was by the court overruled and exception taken thereto. There is no authority under any statute called to our attention or which we have been able to find authorizing the state to introduce more than one offense to go to the jury, with evidence of more than one offense in so far as the crime of incest is concerned, and it is doubtful whether a statute could authorize the submitting to the jury of more than one offense in the same trial. In other words, we think that the court should have required the state to elect on which offense the state would try the appellant. The rule is stated in King v. State, 6 So. 188, 66 Miss. 502, as follows: 'Where there are several offenses, for either of which the accused may be convicted under the indictment, the prosecution should elect the offense which it will pursue, and the testimony should be confined to that offense, unless the case falls within some of the exceptions which render the proof of other distinct offenses admissible.' In the opinion in this case Judge Arnold pointed out the evils that would flow from such a practice in graphic language, wherein it was shown that one juror might be convinced that the defendant was guilty of some particular one of the offenses and of none other, while another juror might think another one of the offenses was committed and not the one which the other juror thought had been committed, and thus all might agree to a conviction, and yet no two jurors be agreed upon any one offense. The law requires the unanimous verdict of twelve jurors to the same offense, and it was error for the court to refuse to require the state to elect which offense it should rely upon and to confine the jury to that offense."

In *Vinson* v. *The State*, 140 Tenn. 70, the defendant was indicted for a violation of the age of consent law. Evidence introduced by the State tended to show the commission of three unlawful acts. Failure of the lower

court to require the State to elect which offense it would rely on was held to be prejudicial error. The reasons for this holding are set forth in the Tennessee court's opinion as follows (p. 72) : "A defendant charged with a particular offense of this character against whom such other offenses are proved is entitled to have the State make an election and advise him upon which offense it will seek a conviction. *Jamison* v. *State,* 117 Tenn., 58, 94 S. W., 675; *Holt* v. *State,* 107 Tenn., 539, 64 S. W., 473. The reasons given in our cases for requiring an election by the State are that the issue may be individualized in the event a second prosecution is brought against the defendant; that the jury may intelligently consider and make a lawful finding upon some one of the charges against the defendant; and that the defendant may be apprised as to which charge the State will press against him and conduct his defense accordingly."

In *Lee* v. *State,* 240 Pac. (Okl.) 148, the defendant was charged with rape. The appellate court discusses the failure of the trial court to require the prosecution to elect which of the offenses brought out by the evidence it would rely on in the following language (p. 149) : "Where there is evidence tending to prove two distinct offenses, and the evidence might support a verdict of guilty of assault to rape, predicated upon either or both of the transactions shown, the state should be required to elect as to which of the transactions it will rely upon for a conviction. There are two impelling reasons for this conclusion: One is that a defendant has a constitutional right to be put on trial for one offense only; and the other is that he has a right to a verdict in which all the jurors concur upon a single offense. In this case the two offenses occurred at the same place and at almost the same time, and both were submitted to the jury for their consideration. Some of the jurors may have believed

that the defendant in his own person committed an assault; while other jurors may have believed and found that he committed a different assault, as aider and abettor of Eubanks, without a unanimous concurrence as to either."

In *People* v. *Davis,* 141 N. W. (Mich.) 667, the respondents were indicted for the crime of adultery. The evidence tended to show more than one offense. The court summed up its views on the question of election, saying (p. 668) : "It was the duty of the prosecutor to fix some specific date, as the respondents had the right to know the date upon which he relied so as to enable them to prepare to meet the charge. Under the case as submitted by the court one juror might have found them guilty of having committed the offense on a certain day between the dates alleged, another on another day, and perhaps no two of the jury agreeing upon the same day. People v. Davis, 52 Mich. 569, 18 N. W. 362."

The case of *Commonwealth* v. *Coyne,* 207 Mass. 21, involved a charge of selling intoxicating liquor to a minor. Evidence was introduced tending to show more than one offense. The court discussed the question of election fully in sustaining the exceptions to the verdict in the lower court as follows (p. 23) : "But at the close of the government's evidence, while the defendant had been set to the bar to face a single issue, two distinct offenses had been put in evidence, to either one of which the averments of the complaint were applicable. By the common law as well as under the Constitution of the Commonwealth, the defendant could not be convicted of both without a violation of the right guaranteed to him, that, when charged with the commission of crime, 'every subject shall have a right to produce all proofs that may be favorable to him' on the issue of his guilt or innocence as set forth in the indictment or complaint. *Commonwealth* v. *Blood,*

4 Gray, 31, 32. *Commonwealth* v. *Dean,* 109 Mass. 349, 352. *O'Connell* v. *The Queen,* 11 Cl. & F. 155, 241. *Commonwealth* v. *King,* 202 Mass. 379, 389. There is no presumption, that the defendant ought to have anticipated that the scope of the testimony to be used against him would not correspond with the essential allegations of the complaint, and that he must expect to be tried for two offenses, although the averment of time, while necessary, need not be proved as laid. *Commonwealth* v. *Dillane,* 11 Gray, 67. The great embarrassment, however, to which he would be subjected in the preparation and presentation of his defense if under the charge of a single crime any number of similar yet distinct crimes may be proved until perhaps there finally might be one of the number sufficiently satisfactory to the jury, is not the only grave objection. It is forcibly pointed out in *State* v. *Chisnell,* 36 W. Va. 659, that where in the unlawful sale of intoxicating liquors two distinct misdemeanors are proved, while only a single sale is charged, some of the jury may be satisfied of the defendant's guilt as to one sale, while other jurors are convinced only as to the second sale, but all finally concur in a verdict of guilty because taken together they are convinced that the defendant has violated the law. It is also manifest, that the wrong which may be done does not end with the verdict and judgment. If again prosecuted, there being no means of identification of the actual offense upon which the jury returned their verdict, the former conviction would not be a protection from a second conviction. There is no bar unless the offense charged in the first complaint was the same offense for which the defendant is charged in the second complaint. *Commonwealth* v. *Robinson,* 126 Mass. 259, 260, 261. *State* v. *Brown,* 58 Iowa, 298. Wharton, Crim. Ev. (9th ed) § 104."

See also *State* v. *King,* 91 N. W. (Iowa) 768; *People*

v. *Williams*, 65 Pac. (Cal.) 323; *State* v. *Yeager*, 41
S. D. 51; *Montour* v. *State*, 11 Okl. Cr. 376; *The State*
v. *Lund*, 49 Kan. 209; *The State* v. *Browning*, 94 Kan. 637.

For the foregoing reasons the verdict and the judg-
ment are set aside and a new trial is granted.

*B. S. Ulrich* (*Ulrich & Hite* on the briefs) for plaintiff
in error L. G. Blackman.

*W. H. Heen* (*Heen & Godbold* on the briefs) for
plaintiff in error Harve Carter.

*W. C. Tsukiyama*, Special Assistant Public Prosecutor
(*J. C. Kelley*, Public Prosecutor, with him on the brief),
for the Territory.