## ALEX TERZIAN v. C. J. CARLSON AND OTHERS.[1]

January 11, 1929.

No. 27,045.

*R. E. Plankerton,* for appellant.
*Nelson & Sawyer,* for respondent C. J. Carlson.

[1]Reported in 222 N. W. 921.

HOLT, J.

Plaintiff appeals from an order denying him a new trial as to defendant C. J. Carlson and granting the other two defendants a new trial. As the new trial was not granted for errors of law exclusively, that part of the order is not appealable; and the only question presented is whether the court erred in refusing to grant a new trial as to defendant C. J. Carlson.

The gist of the action was fraud and misrepresentation in respect to the location and value of five lots which plaintiff was induced to receive as part payment for a rooming house he transferred to defendant Birkland. When the case closed, the court on the motion of C. J. Carlson dismissed as to him. The appeal questions the correctness of this ruling and also rulings excluding evidence of like misrepresentations in other deals wherein C. J. Carlson conveyed other lots near to the lots here involved. The complaint is unduly prolix, and it will not be necessary to refer to it in detail. The trial developed these facts:

Plaintiff, an Armenian of some years' residence in this country, was the owner of a rooming house in Minneapolis which he was willing to dispose of. One Mrs. McNutt, a broker, for a commission undertook to assist him, and defendant Birkland was brought in touch with plaintiff. Birkland knew that defendant G. C. Carlson controlled real estate for trading purposes. And the proposition was made to plaintiff to transfer his rooming house, subject to a mortgage of $850, to Birkland for $550 in cash and five lots in Riverside plat No. 7 in Fridley township, Anoka county. Defendant C. J. Carlson owned 70 or more lots in this plat and had previously conveyed others therefrom through the instrumentality of his brother, defendant G. C. Carlson. G. C. Carlson and Birkland took plaintiff to Columbia Heights, a village adjoining the northeast city limits of Minneapolis, and purported therein to point out the lots proposed to be conveyed in the deal and stated they were worth $350 each. As a matter of fact the lots were situate four or five miles further away from the city limits of Minneapolis and worth, according to the testimony adduced by plaintiff, about $5

apiece. Neither Birkland nor G. C. Carlson had any interest in the lots at that time. When plaintiff had entered a contract for the deal, G. C. Carlson paid his brother $125 and received a deed to the five lots, leaving a blank space for a grantee. Birkland says he paid G. C. Carlson $200 for the lots. Plaintiff's name was thereupon inserted as grantee in the deed. So that C. J. Carlson through the instrumentality of his brother disposed of his lots to plaintiff. Whether there was a sale of the lots in good faith to his brother by this unusual method of executing a deed with the grantee in blank was a jury question.

If there was room for a finding by the jury that in so getting rid of undesirable lots C. J. Carlson made use of his brother as agent, C. J. Carlson should be held responsible for the misrepresentations in respect to their location and value. Atherton v. Barber, 112 Minn. 523, 128 N. W. 827. To show such agency plaintiff offered to prove other transactions where G. C. Carlson had sold lots for his brother in this addition making like misrepresentations, and that in one instance when C. J. Carlson was taken to task for the fraud he made restitution. Such offers were excluded. During this time G. C. Carlson worked in C. J. Carlson's grocery store. It appears also that C. J. Carlson was a trader. The fact that G. C. Carlson was in his brother's employ; that he had disposed of some of these lots for him or bought them of him as he says; that at least once before he had filled in the grantee's name; that to get rid of platted small lots in the sand dune country of Anoka county four or five miles from Columbia Heights cannot well be done without misrepresentation would merit the attention of a jury in determining whether G. C. Carlson was working for C. J. Carlson in the disposition of lots as well as in selling groceries. It also appears to us that the jury should have had the benefit of other transactions or deals involving lots like these disposed of by C. J. Carlson through the instrumentality of G. C. Carlson and by means of similar misrepresentations. Where a conspiracy to defraud is alleged to exist between two or more, considerable latitude in the reception of circumstantial evidence should be allowed, for, usually by design, the

wrongdoers seek to hide the connection with each other and attempt to keep in the background the one financially able to respond should there be an effort at redress.

In Berkey v. Judd, 22 Minn. 287, 288, the syllabus states: "Another act of fraud is admissible to prove a particular alleged fraud whenever there is evidence that the two are parts of one scheme or plan of fraud, committed in pursuance of a common purpose," this being a quotation from Jordan v. Osgood, 109 Mass. 457, 461, 12 Am. R. 731. See also Hinkley v. Freick, 112 Minn. 239, 243, 127 N. W. 940, where it is said:

"Fraud opens wide the door for all fairly relevant evidence including evidence as to similar but unconnected facts in order to show systematically fraudulent intention on the part of the party sought to be charged."

Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259, applies the same rule and cites numerous authorities, including some criminal cases in this state where evidence was received upon the same principle. See also State v. Horr, 163 Minn. 141, 203 N. W. 979.

The order is reversed and plaintiff is granted a new trial as to defendant C. J. Carlson.