KAZUO HASHIMOTO *v.* HENRY HALM.

NO. 2847.

Argued July 3, 1953.          Decided November 20, 1953.

Towse, C. J., Le Baron and Stainback, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

This cause is before the court upon the bill of exceptions of appellant Halm, who appeals from a joint and several judgment of $3,000 against himself and three co-conspirators.

The errors specified are consolidated into the sole determinative issue: whether there was sufficient competent evidence to support the verdict of the jury.

The amended complaint alleges that Shigeru Kiyabu, George Tsutsui, Norman Kwack and Henry Halm "* * * were * * * members of a conspiracy which was established and which * * * existed for the illegal purpose of defrauding and otherwise illegally procuring money from individuals including the Plaintiff. * * * the Defendants * * * in furtherance of the aforementioned conspiracy, did conspire to defraud and take from the Plaintiff all of the money that they could; that on the 8th day of September, 1948, the Defendants * * * did defraud and did take from the Plaintiff the total sum of $3,000.00 in that Defendants engaged the Plaintiff in a gambling game played with cards, to-wit: high card; * * * and that during and in the course of said game, the Defendants caused to be taken from the Plaintiff and the Plaintiff did deliver over to the Defendants during the course of said game in the sum of $3,000.00."

Appellee introduced evidence of six independent alleged fleecings in addition to the transaction in which he was fleeced and upon which the damages in the instant case were awarded. The principal ground of its asserted admissibility was to establish that a continuing conspiracy existed from June to October 12, 1948 among the defendants and others, the object of which was to defraud individuals in the city of Honolulu, and that during its existence Hashimoto became a victim at the hands of the defendants. Two of the collateral fleecings predated the instant case. Four occurred after it. All but one involved "rigged" card games. Appellant Halm was alleged to have participated in all; Kiyabu, Tsutsui and Kwack in all but two. The record yields an abundance of the customary circumstantial evidence so prevalent in proceedings of this nature, not only with respect to the specific fleecing alleged, but also in the re-creation of the collateral fleecings.

Appellee was a housepainter. Kiyabu, in company with Tsutusi, called at his home ostensibly to offer him a job. Prior to reaching their destination to inspect the work, Kwack joined them and displayed a bundle of currency packaged with a printed paper band. On arrival, Kwack left the vehicle. Tsutsui then suggested that he, Hashimoto, and Kiyabu "take the money away from the defendant Kwack" in a rigged gambling game. The appellee was thereupon persuaded to enter into a card game against Kwack and the quartet proceeded to a hotel where a game of "high card" was begun in which Tsutsui ostensibly won $10,000 from Kwack. Kwack refused to pay the loss unless Kiyabu, Tsutsui, and Hashimoto could first guarantee payment of a similar sum had they lost. They being momentarily unable to comply, Kwack stated that he would wait until noon of the following day to

enable them to produce sufficient funds to cover such a loss. They then departed from the hotel, Tsutsui requesting Kiyabu and the appellee to meet him the following morning, stating that in the meanwhile he would borrow sufficient funds to comply with Kwack's demand. Appellee met Tsutsui, Kiyabu and Kwack the following day and they again invited appellee for a ride, during the course of which Tsutsui announced that he had been unable to raise his portion of the $10,000 and urged the appellee to raise as much thereof as possible. At this juncture appellee withdrew $950 from his savings account at the Bishop National Bank and was prevailed upon to borrow from friends and relatives. Appellee borrowed $2,000 and again met Tsutsui who announced that he, Tsutsui, had collected $5,000.

They then drove to the vicinity of Halm's residence at 431-A Olohana street where Tsutsui left the vehicle and entered the house. Shortly thereafter Tsutsui returned, and the group drove to Diamond Head beach road where Tsutsui advised Kwack that he had $8,000 with him, and requested Kwack to pay off his $10,000 loss of the preceding day. Kwack refused upon the ground that the agreement was to produce the sum prior to twelve o'clock noon, and that they had failed to do so. After further discussion Tsutsui suggested that inasmuch as they all had funds, they commence another game. A game of high card was started, Tsutsui again indicating to appellee that the game was "rigged" against Kwack. Kwack, however, "won" all of the money in the group, including the sum of $3,000 from appellee. At the conclusion of the game Kiyabu again drove the group to Halm's home where Kiyabu remained for approximately five minutes, and then departed. Appellee, upon discovering that he had been victimized by the group, reported the fleecing.

He had not recovered any portion of his losses at the time of suit below.

In addition to the fleecing recited *supra,* appellee introduced evidence of at least six collateral fleecings, which in a marked degree followed the same general pattern of operation with the same cast of characters except as noted *supra.* The focal feature of each collateral scheme revealed that in some degree, at times remotely and at times in a more direct manner, the appellant Halm participated. Boodle, a deceptive device in in which currency is packaged with bills of smaller denominations or trimmed newspaper on the inside, but displaying currency of large denomination on the outside and bearing a $1,000 printed wrapper similar to that used in banks, was used in each of the collateral schemes. They occurred over a relatively short period both preceding and after the instant case. Their probative value was urged to be in support of the allegation that at or about the time appellee was victimized there was an existing and uninterrupted conspiracy between all of the named defendants including others at times, formed and existing for the broad purpose and object of fleecing and defrauding *any* likely prospect. Testimony was introduced that Halm participated in the preparation of the boodle in each instance sought to be proved; that boodle was used in the transaction involving Hashimoto; that Halm had in fact prepared and supplied the instant boodle which had been called for and later returned to Halm's home; and that in at least four of the fleecing transactions the vehicle used to transport the fleecers and the victim had made several stops at or in the immediate vicinity of Halm's home at 431-A Olohana street. Halm denied being a member of the conspiracy, but admitted "loaning" sums of money in return for a

"10 per cent commission."

At trial, the plaintiff proceeded upon his statutory remedy (R. L. H. 1945, §§ 11355-11358), an ex contractu count, and an ex delicto count. The ex contractu count was abandoned, the trial proceeding to conclusion upon the remaining counts.

Appellant contends reversible error in the admission of testimony of the six collateral schemes, urging that the collateral fleecings were *res inter alios acta* evidence and as such not within any of the established exceptions to the rule excluding such evidence, *viz*: "Accordingly, as a general rule, evidence of other acts, even of a similar nature, of the party whose own act or conduct or that of his agents and employees is in question, of other similar transactions with which he has been connected, of a former course of dealing, of his conduct or that of his agents and employees on other occasions, or of his particular conduct upon a given occasion is not competent to prove the commission of a particular act charged against him, unless the acts are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars." (20 Am. Jur., Evidence, § 302.)

Unless otherwise inadmissible, evidence of similar acts or transactions are admissible if their relevancy establishes an issue joined in the proceeding or where such evidence is offered to corroborate evidence already introduced. Evidence of similar acts frequently become relevant in proceedings grounded in fraud or deceit, since it tends to establish a particular state of mind, proclivity, fraud, deceit, motive, intent or interest in the subject matter, concealment, secrecy or circumvention. (*Mendota Coal & Coke Co.* v. *Eastern Ry. & Lumber Co.*, 53 F. [2d] 77; see 32 C. J. S., Evidence, § 580, for collection of authorities.)

In establishing a conspiracy to perpetrate a particular fraud testimony may be offered that the conspirators committed a similar fraud upon a third party at or about the same time employing execution of the same or similar means or scheme to effect the fraud sought to be proved. "The testimony was obviously offered to prove that these defendants, within two years, had been involved in fraudulent real estate transactions similar in character to those complained of in the case on trial. * * * As shown by the finding, this evidence established in the mind of the court the fact that these fraudulent transactions were carried out by some or all the defendants in a manner and by means similar to those in this case, and showed on their part 'a mental attitude and system of the appellants to conspire together fraudulently to deprive owners of real estate of their holdings * * *.' * * * Where it is charged that fraud has been committed by two or more persons pursuant to a combination or conspiracy for that purpose, the fraudulent combination and fraudulent motive may be inferred from a series of successive transactions of the same character in respect to such a subject-matter, and it is not essential that such transactions should be contemporaneous or nearly so. The evidence is not introduced to prove the character of the parties, but to show them conspiring to defraud by acts similar to those under inquiry in the particular case and establishing the quo animo and a common purpose so to raise an inference that the particular subject-matter was but a part of the same conspiracy [citing authorities]." (*Davis* v. *Maislen*, 116 Conn. 375, 165 Atl. 451.) "Fraud opens wide the door for all fairly relevant evidence including evidence as to similar but unconnected facts in order to show systematically fraudulent intention on the part of the party sought to be

charged." (*Terzian* v. *Carlson*, 176 Minn. 219, 222 N. W. 921.)

Great latitude should be accorded the admission of circumstantial evidence of this nature if in any reasonable manner it tends to establish a conspiracy or connects those aiding, advising, abetting or encouraging the conspiracy sought to be proved. It is no objection that the evidence sought to be introduced embraces numerous other transactions and extends over a prolonged period of time. The limits of admissibility rest in the sound discretion of the trial judge. The exercise of that discretion will not be disturbed where, such as here, it tends even in a remote degree to establish the ultimate facts sought to be proved. (*Mowrey* v. *Reinking*, 203 Iowa 628, 213 N. W. 274; *Stoner* v. *Wilson*, 140 Kan. 383, 36 P. [2d] 999; *Rent-A-Car Co.* v. *Globe & Rutgers Fire Ins. Co.*, 161 Md. 249, 156 Atl. 847; see 15 C. J. S., Conspiracy, § 29, for collection of authorities.)

Upon the record we are of the opinion that evidence of the collateral conspiracies was admissible, since it tended to establish a common design, purpose, or intent, and its cumulative circumstantial effect tended to establish concurring knowledge and approbation of each coconspirator's acts. That evidence being presented, the jury was warranted in our opinion in its findings.

Appellant contends that at the time certain admissions and declarations of coconspirators was admitted the existence of the conspiracy had not been established. The principle of law is too well settled to necessitate the citation of authorities, that to a great degree the existence of a civil conspiracy is proved by circumstantial evidence. Since the allegations of a complaint grounded in civil conspiracy are ofttimes susceptible of proof only by such evidence, proceedings in which a conspiracy to de-

fraud is laid in the complaint are particularly within the principle that fraud may be deduced from all of the surrounding circumstances. "Cases of the character here under consideration, where a conspiracy to defraud is the gist of the charge, are peculiarly within the spirit and reason of this rule, because from their very nature the allegations are only susceptible of proof by circumstantial evidence." (*American Sav. Bank & Trust Co.* v. *Bremerton Gas Co.,* 99 Wash. 18, 168 Pac. 775.) "* * * In the very nature of things, the existence of a conspiracy is generally a matter of inference deduced from acts and declarations of the parties. The existence of the joint assent of the parties need not be proved directly. Like any other ultimate fact, it may be found as an inference from facts proved. It is enough if the evidentiary facts and circumstances — pieced together and considered as a whole — convince the judicial mind that the parties united in an understanding way to accomplish the fraudulent scheme. Drake v. Stewart, 8 Cir., 76 F. 140; Calcutt v. Gerig, 6 Cir., 271 F. 220; Holbert v. Allred, 24 Ga. App. 727, 102 S. E. 192; Stoner v. Wilson, 140 Kan. 383, 36 p. 2d 999; Addison v. Wilson, 238 Ky. 143, 37 S. W. 2d 7." (*Hedrick* v. *Perry,* 102 F. [2d] 802.)

Inasmuch as the rule here under discussion is applicable to both criminal and civil conspiracies we adopt the reasoning of *Spies et al.* v. *The People,* 122 Ill. 1, appeal dismissed 123 U. S. 131, 31 L. Ed. 80, 8 S. Ct. 22, 283: " A further objection is made as to the order, in which the trial court permitted certain portions of the evidence to be introduced. It is claimed, that some of the acts and declarations, proven in the case, were allowed to come in, before proof was made of the conspiracy or of the connection of the defendants with it. This matter is largely discretionary with the trial judge.

"The proof of conspiracy, which will authorize the introduction of evidence as to the acts and declarations of the conspirators, may be such proof only as is sufficient, in the opinion of the trial judge, to establish *prima facie* the act of conspiracy between the parties, or proper to be laid before the jury, as *tending* to establish such fact. * * *

"The rule, that the conspiracy must be first established *prima facie,* before the acts and declarations of one conspirator can be received in evidence against another, can not well be enforced 'where the proof of conspiracy depends upon a vast amount of circumstantial evidence, a vast number of isolated and independent facts; and, in any case, where such acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial, taken together, shows that such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before or after the introduction of such acts and declarations.' "

The appellant's contention being directed to the order of proof, we find it to be without merit when considered with the ample, substantial evidence of record which establishes the conspiracy. We further find no abuse of discretion by the trial judge in the order of its admission.

Appellant also contends that a substantial portion of the evidence consisting of admissions of coconspirators not made in his presence was admitted in violation of the hearsay rule, and as such was incompetent as against him.

"When a conspiracy is established, everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by every one of them, and may be proved against each. * * * The same rule as to

the admission of acts or declarations of co-conspirators applies in criminal, as in civil, cases. * * * such statements are admissible against defendants charged with conspiracy to defraud * * *." (40 Am. Jur., Conspiracy, § 40; see also *Glasser* v. *United States,* 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Krulewitch* v. *United States,* 336 U. S. 440, 93 L. Ed. 790, 69 S. Ct. 947.

" 'Where two or more persons are associated for the same illegal purpose, any act or declaration of one of the parties in reference to the common object, and forming a part of the *res gestae,* may be given in evidence.' *American Fur Company* v. *United States,* 2 Pat. 365.

"Whether the declarations were made in the presence or brought to the knowledge of either of the defendants is immaterial. * * *." (*Nudd et al* v. *Burrows, Assignee,* 91 U. S. 426, 438, 23 L. Ed. 286.)

The record is replete with evidence *aliunde* the admission of appellant's coconspirators which connects the appellant with the continuing conspiracy alleged in the complaint.

The remaining specifications of error have been examined. We find them to be without merit.

We find sufficient competent evidence to support the verdict of the jury.

The judgment of the trial court is affirmed.

*W. D. Ackerman, Jr.* (*E. N. Sylva* on the briefs) for appellant.

*R. G. Hogan* (*Hogan & Dyer* on the brief) for appellee.