TERRITORY OF HAWAII *v.* JACK KITABAYASHI, FRANK LOUIS AND SHOTARO ENDO, AKA "PUNCHY."

NO. 2995.

ARGUED NOVEMBER 15, 1955.          DECIDED APRIL 6, 1956.

TOWSE, C. J., STAINBACK, J., AND CIRCUIT JUDGE McKINLEY IN PLACE OF RICE, J., DISQUALIFIED.

OPINION OF THE COURT BY TOWSE, C. J.

This is a writ of error from a judgment of the Fifth Circuit Court finding the defendants guilty of conspiracy in the first degree.

The indictment contained three counts. Count one alleged the obtaining of money by means of a confidence game; count two, the obtaining of money by false pretenses; and count three, conspiracy in the first degree. Counts one and two were abandoned during the course of the trial and count three alone was submitted to the jury.

Conspiracy in the first degree as defined by section 11128, Revised Laws of Hawaii 1945, as amended, is: "Conspiracy to commit a felony, or to instigate or incite another * * * to commit a felony, * * *." A confidence game is defined by section 11378, Revised Laws of Hawaii 1945, as amended, and is included within the definition of a felony in section 10602, Revised Laws of Hawaii 1945.

The testimony established that on September 10, 1953, Louis, a long-time friend of Souza, the complainant, visited Souza at his home in company with one Kitabayashi. Louis introduced Kitabayashi to Souza whereupon both invited Souza for a ride in Kitabayashi's car. While riding they met Endo, who was also introduced to Souza by Louis. Endo and Kitabayashi portrayed the role of strangers and were introduced to each other by Louis. By purportedly repaying an old debt to Louis together with a bonus for the latter's trouble and remarking that his recent good luck at Guam had netted him the "15 grand" which he carried with him in a bag, Endo represented himself to be a successful gambler of considerable means. The contents of the bag, however, were at no time disclosed. Endo expressed a desire to proceed to Lihue to engage in a gambling game, and Kitabayashi and Louis consented to transport him there. En route, Louis stopped the car at Endo's request, and during the latter's absence, Louis and

Kitabayashi prevailed upon Souza to join them in a rigged gambling game to relieve Endo of his bag of cash.

The rigged game followed the usual pattern of such games with a few variations. A piece of cardboard was divided and designated into even and odd-numbered halves by placing three odd-numbered playing cards on one side and three even-numbered playing cards on the other. A die and cup were produced, the die placed in the cup, and the cup overturned. At this point while Endo's back was turned, Kitabayashi would tilt the cup to reveal the face of the die to Souza, and Souza would thereupon place his bet on the even or odd side of the cardboard, while Endo would place his bet on the opposite side. Upon lifting the cup and revealing the die as cast, Souza would consistently win the wager. Wagering began with $20 supplied by Louis and rapidly mounted to the point where Endo wagered the entire contents of the bag. Thereafter Endo arranged to engage in a subsequent game, informing them that he could and would match the $30,000. Souza was thereupon induced to liquidate his United States Savings Bonds and on September 12, 1953, to wager the entire proceeds of $7,520 in addition to his previous winnings upon one play of the die. As before, Souza placed his bet after the face of the die had been secretly revealed to him. However, at the moment the cup was to be lifted and the die revealed, Souza was induced to look elsewhere by someone suddenly remarking that a "machine" was approaching and, upon turning back, Souza discovered that the lifted cup revealed that he had lost the wager. Collecting his winnings, Endo stated "Tomorrow we play again, tomorrow we play again. * * * You fellows talk it over, talk it over" and later, "Tomorrow we play again."

At the trial one Alice Victorino testified that during the latter part of August and the early part of September,

she frequently saw the three defendants in a car parked under a tree near her place of employment.

The following testimony was allowed over objection:

Charles Merseberg, Jr., was permitted to recount the acts and declarations of Endo from the time of the last game until Endo departed from Kauai the following day. The testimony consisted principally of Endo's meeting with Kitabayashi and Louis behind the Nawiliwili Transportation garage at Nawiliwili where Endo first spoke with Kitabayashi and where later Kitabayashi paid Merseberg $100 to discharge a debt of which Merseberg had no recollection. Merseberg's testimony also related to Endo's attempt to leave Kauai immediately thereafter, as well as his actual departure the following afternoon.

Souza narrated his conversations with each of the three defendants in the absence of the other two, which conversations occurred within a period of less than twenty-seven hours following the last game.

Etaro Yamagata testified that Endo and Kitabayashi had attempted to fleece him of $14,000 in March of 1953 in a game almost identical to that in which the defendants had engaged Souza. The trial court overruled the objection as well as the motion to strike Yamagata's testimony in so far as the testimony applied to defendant Louis.

Plaintiffs in error now contend:

First: That the conspiracy terminated at the close of the last game and therefore the trial court erred in admitting the testimony of Souza and Merseberg which related to *events* occurring subsequent to the last game, and further erred in this connection in admitting as binding upon all of the co-conspirators, the testimony of Merseberg and Souza as to *statements* and *declarations* made by the plaintiffs in error in the absence of their co-conspirators and after the last game had been played.

Second: That the admission of Yamagata's testimony

without limiting its purpose to establishing identity, motive, or acquaintanceship as well as the trial court's overruling of the motion to strike Yamagata's testimony in so far as it was admitted against defendant Louis constituted error.

These contentions raise the following questions for determination:

First: Was the testimony of Yamagata relating to the earlier fleecing attempt committed in an almost identical manner as the instant case admissible, without limiting its purpose to establishing identity, motive, or acquaintanceship?

Second: Should the motion to strike Yamagata's testimony have been granted upon the ground that it was not binding upon the defendant Louis?

Third: Upon the occurrence of what act or incident — or at what precise time — did the conspiracy terminate?

Fourth: Were the acts and declarations of any one of the co-conspirators occurring subsequent to the termination of the conspiracy admissible against his codefendants?

Plaintiffs in error concede the general rule to be that the acts and declarations of co-conspirators during the pendency of a conspiracy in furtherance of the common design are admissible against all. The doctrine has been enunciated in this jurisdiction by statute: "The act of each party to a conspiracy in pursuance thereof, is the act of all." (§ 11123, Revised Laws of Hawaii 1945), as well as by decisions of this court: " 'When a conspiracy is established, everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by every one of them, and may be proved against each.' * * * (40 [*sic* 11] *Am. Jur., Conspiracy* § 40; * * * [citing cases])." (*Hashimoto* v. *Halm,* 40 Haw. 354, 363.) " '* * *

when the conspiracy is once established the acts and declarations of any one conspirator in furtherance of the common design become the acts and declarations of all. They are in the eyes of the law, one man; they breathe one breath; they speak one voice; they wield one arm, and the law says that the acts, the words, the declarations of any of them, while in the pursuit of the common design, whatever unlawful means are chosen by him in pursuit of the common design are the acts, the words and the declarations of all.' " (*Territory* v. *Goto,* 27 Haw. 65, 91, quoting with approval the jury instruction of the trial judge.)

The issue raised herein is restricted to the testimony relating to events which plaintiffs in error assert occurred before and after the conspiracy existed and not during its pendency. As to declarations made during the pendency of the conspiracy, "The theory of admissibility usually advanced is one of criminal agency, i.e., when men enter into an agreement for an unlawful end, they become ad hoc agent for one another * * *." (2 Wharton's *Criminal Evidence,* § 699, p. 1185 [11th ed.].) "Such declarations are admitted upon no doctrine of the law of evidence, but of the substantive law of crime. When men enter into an agreement for an unlawful end, they become ad hoc agents for one another, and have made a 'partnership in crime.' What one does pursuant to their purpose, all do, and as declarations may be such acts, they are competent against all. [citing cases.]" (*Van Ripper* v. *United States,* 13 F. [2d] 961, 967 [2d Cir.].) Consequently, the acts and declarations of a co-conspirator which occur prior to the formation of, or subsequent to the termination of the unlawful partnership are inadmissible against their co-conspirators, unless there exists a predicate independent of the criminal agency.

Evidence of previous or subsequent transactions introduced to prove the intent of an accused in the commission

of an act where such intent is a fact in issue, is to be rigidly distinguished from evidence of the declarations and acts of co-conspirators revealing the genesis and scope of a conspiracy. The former has been adequately discussed by this court in *Territory* v. *Caminos,* 38 Haw. 628, *Territory* v. *Hamilton,* 39 Haw. 14.

It appears from the record before us that the plaintiffs in error, in urging their present contention, have misconstrued the theory upon which Yamagata's testimony was received against them. The case for the Territory was presented upon the theory that the defrauding of Souza was the outgrowth of a conspiracy to defraud which first manifested itself when Kitabayashi and Endo initially attempted to defraud Yamagata, and that the unlawful confederation continued throughout the entire sequence of events in which Souza lost his money. The testimony relating to the Yamagata transaction was not offered to establish a prior offense committed by any one or more of the co-conspirators named in the indictment, but was offered and admitted as part of the history of the conspiracy, into which all of the defendants eventually entered. Where a co-conspirator testified that some years prior to the occurrence of the transaction which was the subject matter of the prosecution he had been similarly swindled and later joined the conspiracy, it was held that: "* * * the government had the right to show the whole history of the conspiracy from its commencement to its consummation." (*Commonwealth* v. *Stuart,* 207 Mass. 563, 93 N. E. 825, 828; see also *Commonwealth* v. *Scott,* 123 Mass. 222.)

By establishing that the fraudulent scheme employed herein had been conceived between Kitabayashi and Endo as early as March of 1953, the Territory was establishing the genesis of the unlawful agreement, of which the jury might reasonably find the similarly conducted fraud of

Souza was a part. An identical theory adopted by the prosecution was approved by this court in *Territory* v. *Goto,* 27 Haw. 65.

An allegation of a continuing conspiracy is not required. "* * * the scope of the conspiracy must be gathered from the testimony, and not from the averments in the indictment." (*Terry* v. *United States,* 7 F. [2d] 28, 29 [9th Cir.]) ; and it is the long established rule in this jurisdiction that a conspiracy may be proved even though there is no allegation relating to a conspiracy in the indictment. (*Territory* v. *Blackman,* 32 Haw. 460.)

Louis' participation in the conspiracy is adequately displayed by evidence of his meeting with the other plaintiffs in error during the months of August and September and by his subsequently acting in concert with them during the Souza transaction. Whether Louis became connected with the conspiracy is *a question of fact properly left for determination by the jury.* (*Bogy* v. *United States,* 96 F. [2d] 734 [6th Cir.].) Louis is barred from asserting that his union with the other defendants created a separate and distinct offense for: "In a situation where a conspiracy has been formed the joinder thereof by a new member does not create a new conspiracy, does not change the status of the other conspirators, and the new member is as guilty as though he were an original conspirator." (*Marino* v. *United States,* 91 F. [2d] 691, 696 [9th Cir.].) " 'The addition of new parties after a conspiracy is formed does not necessarily destroy the identity of the conspiracy, but it continues as the same conspiracy. * * * Note, 3 Am. St. Rep. 477." (*Territory* v. *Goto,* 27 Haw. 65.)

Louis is precluded in the circumstances presented by the record before us from asserting the inadmissibility of evidence against him which relates to the attempt to defraud Yamagata for "* * * when a party joins an existing group already so engaged, he assumes responsi-

bility for all that has been done theretofore. * * * For this reason all that was done before he entered may be used against him * * *." (*Van Ripper* v. *United States,* 13 F. [2d] 961 [2d Cir.]; see also: *United States* v. *Mesarosh,* 223 F. [2d] 449 [3d Cir.]; *Frankfeld* v. *United States,* 198 F. [2d] 679 [4th Cir.]; *Deacon* v. *United States,* 124 F. [2d] 352 [1st Cir.]; *Robinson* v. *United States,* 33 F. [2d] 238 [9th Cir.].)

In *Van Ripper* v. *United States* (*supra*) it was held that evidence of events of a conspiracy occurring six months prior to the joinder of co-conspirator was admissible against him. In *Deacon* v. *United States* (*supra*) the period was in excess of three months; in *United States* v. *Mesarosh* (*supra*) and *Frankfeld* v. *United States* (*supra*), the periods varied from several years in some instances to many years in others.

In addition to the foregoing, our determination is predicated upon and follows as a corollary to the statutory provisions of this jurisdiction relating to criminal liability of a conspirator, *viz.*: "The act of each party to a conspiracy in pursuance thereof, is the act of all." (§ 11123, Revised Laws of Hawaii 1945.) "Any person knowingly acceding to and joining in conspiracy after the same is formed, is a party thereto no less than one who originally takes part in forming the same." (§ 11121, Revised Laws of Hawaii 1945.) Unless evidence of transactions occurring prior to the union of an accused with the fraudulent scheme are admissible against him, the rule that he may be held criminally liable as an original party would in effect be a nullity.

Precedent relating to the admission of declarations uttered by a co-conspirator subsequent to the termination of the conspiracy against his co-conspirators is well established. "After the conspiracy has come to an end, whether by success or by failure, the admission of one

conspirator by way of narrative of past facts, are not admissible in evidence against the others." (*Logan* v. *United States,* 144 U. S. 263, 36 L. ed. 429, 12 Sup. Ct. 632 [1892].) This prohibition was recognized and applied to utterances without reference to past facts in *Brown* v. *United States,* 150 U. S. 93, 37 L. ed. 1010, 14 Sup. Ct. 39 (1893), wherein: "In the admission of the statements and declarations * * * the court assumed that the acts and declarations of one co-conspirator, after the completion or abandonment of the criminal enterprise, constituted proof against the defendant of the existence of the conspiracy. This is not a sound proposition of law."

A further expression by the same court relevant to this proposition was later pronounced in *Fiswick* v. *United States,* 329 U. S. 211, 91 L. ed. 196, 67 Sup. Ct. 224 (1946). If, as we think, the conspiracy charged and proved did not extend beyond the date of the last overt act, the admissions of each petitioner were improperly employed against the others. While the act of one partner in crime is admissible against the others where it is in furtherance of the criminal undertaking * * *, all such responsibility is at an end when the conspiracy ends." In *Krulewitch* v. *United States,* 336 U. S. 440, 93 L. ed. 790, 69 Sup. Ct. 716 (1949), when ruling that utterances of a conspirator containing no reference to past fact and occurring subsequent to the termination of a conspiracy, are inadmissible against a co-conspirator, the court held: "It [the declaration] was made in petitioner's absence * * *. The testimony thus stands as an unsworn, out-of-court declaration of petitioner's guilt. This hearsay declaration, attributed to a co-conspirator was not made pursuant to and in furtherance of objectives of the conspiracy charged in the indictment, because if made, it was after those objectives either had failed or had been achieved. Under these circumstances, the hearsay declaration attributed to the alleged

co-conspirator was not admissible on the theory that it was made in furtherance of the alleged criminal transportation and undertaking." With reference to the government's contention that the declarations were part of an implied conspiracy to conceal the crime, the court remarked: "The rule contended for by the Government could have far-reaching results. For under this rule plausible arguments could generally be made in conspiracy cases that most out-of-court statements offered in evidence tended to shield co-conspirators. We are not persuaded to adopt the Government's implicit conspiracy theory which in all criminal conspiracy cases would create automatically a further breach of the general rule against the admission of hearsay evidence." The latest pronouncement by the Supreme Court of the United States upon acts and declarations of a conspirator occurring subsequent to the termination of a conspiracy firmly distinguishes for the first time, the admissibility of acts from the admissibility of declarations:

"*Acts* which took place after the conspiracy ended which were relevant to * * * [the facts in issue] were competent—* * *.

"Declarations stand on a different footing. Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant is the agent of the other, and the admissions of one are admissible against both under a standard exception to the hearsay rule applicable to the statements of a party. * * * But such declaration can be used against the co-conspirator only when made in furtherance of the conspiracy. * * * There can be no furtherance of a conspiracy that has ended. Therefore, the declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended. That is the teaching of *Krulewitch* v. *United States, supra,* and *Fiswick* v. *United States, supra.* Those cases dealt only with declarations of one conspirator after

the conspiracy had ended. They had no application to *acts* of a conspirator or other which were relevant to prove the conspiracy. True, there is dictum in *Logan* v. *United States, supra,* at 309, frequently repeated, which would limit the admissibility of both acts and declarations to the person performing them. This statement of the rule overlooks the fact that the objection to the declaration is that they are hearsay. This reason is not applicable to acts which are not intended to be a means of expression. The *acts,* being relevant to prove the conspiracy, were admissible, even though they might have occurred after the conspiracy ended." (*Lutwak* v. *United States,* 344 U. S. 604, 97 L. ed. 593, 73 Sup. Ct. 481 [1953].)

If admissibility is to be contingent upon existence of the conspiracy, then the pertinent inquiry is: *When did the conspiracy terminate?*

"No general rule of law can accurately be laid down touching when accomplishment [of a conspiracy] has been achieved. It follows that the latter question is one wellnigh wholly of fact to be resolved by common sense and human observation and experience, and largely each category must be weighed in its own facts.

"But if a court should be so hardy as to attempt to formulate a general rule as to when a continuing criminal conspiracy, having for its object illicit gain, is at an end, it might well run somewhat thus: Whenever the unlawful object of the conspiracy has reached that stage of consummation, whereat the several conspirators having in spendable form their several agreed parts of the spoils, may go their several ways, without the necessity of further acts or consultation, about the conspiracy, with each other or among themselves, the conspiracy has ended." (*McDonald* v. *United States,* 89 F. [2d] 128, 133 [8th Cir.], see p. 134 for collection of authorities in margin.)

However, " 'Where the conspiracy contemplates a series of crimes, acts and declarations of a conspirator

during the existence of the conspiracy, although after the commission of a specific crime for which defendant is on trial, are admissible.' 16 C. J. 663, § 1319." (*Neal* v. *State*, 104 Neb. 56, 175 N. W. 669; also see: *United States* v. *Sherman*, 171 F. [2d] 619 [2d Cir.]; *Bartlet* v. *United States*, 166 F. [2d] 920 [10th Cir.]; *People* v. *Howard*, 135 Cal. 226, 67 Pac. 148; *People* v. *Ash*, 88 Cal. App. [2d] 819, 199 P. [2d] 711; *People* v. *Cowan*, 38 Cal. App. [2d] 231, 101 P. [2d] 125; *People* v. *Williams*, 30 Cal. App. [2d] 234, 85 P. [2d] 974; *People* v. *Schmidt*, 33 Cal. App. 426, 165 Pac. 555; *State* v. *Hammock*, 18 Idaho 424, 110 Pac. 169; *People* v. *Halpin*, 276 Ill. 363, 114 N. E. 932; *Card* v. *State*, 100 Ind. 415, 9 N. E. 591; *People* v. *Peckins*, 153 N. Y. 594, 47 N. E. 883; *People* v. *Hall*, 51 Ap. Div. 57, 64 N. Y. Supp. 493; *State* v. *Hurst*, 153 Minn. 525, 193 N. W. 680; *Music* v. *State*, 135 Tex. Cr. App. 522, 121 S. W. [2d] 606.)

In *State* v. *Adams*, 257 Wis. 433, 43 N. W. [2d] 446 (1950), the facts demonstrating continuance of the conspiracy are very similar to those of the instant case. The defendant was tried for committing an illegal operation and murder arising from the same transaction. After the operation had been performed and as the defendant's co-conspirator-victim was departing, defendant advised her to call or return "if she didn't feel good." The court sustained the admission of statements of the co-conspirator-victim uttered during her journey home on the ground that the conspiracy had not terminated since subsequent acts in furtherance of the common design *were contemplated if the victim became ill.*

We find in the record before us facts which demonstrate that the object of the instant conspiracy transcended the transaction wherein Souza was fleeced. Upon collecting his "winnings," Endo proclaimed: "Tomorrow we play again, tomorrow we play again. * * * You fellows talk it over, talk it over." Endo then retreated to the front of the car to await their decision. Souza's testimony estab-

lishes that Kitabayashi and Louis assured Souza that "* * * next time, tomorrow, he was going to watch again. * * * going to watch again. * * * because I didn't watch good, that he was going to watch too." After a short period, Endo returned to the car and again stressed: "Tomorrow we play again" before he departed. We find the foregoing acts and declarations of Endo sufficient alone to indicate that the common criminal design of the plaintiffs in error included a plan to induce Souza to engage in another and later game, in which it was planned that he would be fleeced of further funds or property. The foregoing facts, establishing that the criminal design contemplated a further fraud, are supported by Louis' response to Souza's statement that Endo was attempting to leave Kauai, *viz.*: "You shouldn't go down there. You know we are playing again. He is not going, and if he was going, he would come back again."

In view of the foregoing evidence demonstrating that the contemplated scope of the criminal design encompassed the entire period during which all of the acts and declarations of the co-conspirators admitted in evidence occurred, we find no error in the trial court's rulings upon the admissibility of that evidence.

We conclude, in the circumstances here presented, the issue of termination of the conspiracy, as well as the question of its existence was one of fact for determination by the jury. (*Lefco* v. *United States,* 74 F. [2d] 66 [3d Cir.] ; *People* v. *Kynette,* 15 Cal. [2d] 731, 104 P. [2d] 794; *People* v. *Holmes,* 118 Cal. 444, 50 Pac. 675.) Their verdict is amply supported by the evidence.

Judgment affirmed.

*George T. Nakamura* (*Yasutaka Fukushima* with him on the briefs) for plaintiffs in error.

*Morris S. Shinsato,* Deputy County Attorney (also on the brief), for defendant in error.