STATE OF HAWAII, Plaintiff-Appellant *v.* WILFORD K. PULAWA, SR., also known as Nappy Pulawa, and ALVIN GEORGE KAOHU, Defendants-Appellees

NO. 5917

and

STATE OF HAWAII, Plaintiff-Appellee *v.* ROBERT R. WILSON, also known as Bobby Wilson, DANNETTE BEIRNE LEOTA, also known as Sister, and HENRY JAMES HANALEI HUIHUI, also known as Henry W. Huihui, Defendants-Appellants

NO. 5923

SEPTEMBER 29, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* On February 13, 1974, the defendants were indicted for the crimes of kidnapping, conspiracy, and murder. Specifically, the indictment charged that the defendants had conspired with one another to kidnap Dennis Masaichi Iha and to murder Lamont Constancio Nery and Dennis Masaichi Iha, and that they did in fact kidnap Lamont Constancio Nery and Dennis Masaichi Iha and did in fact murder Lamont Constancio Nery and Dennis Masaichi Iha. Mr. Brook Hart represented defendants Huihui, Leota, and Wilson. Mr. David Schutter represented defendants Kaohu and Pulawa.

The trial of the defendants before a jury commenced on April 29, 1974. The State rested its case on July 8, 1974. On July 11, 1974, the trial court dismissed the conspiracy counts on the ground that prosecution was barred by the statute of limitations. At the same time the court declared a mistrial on the counts of kidnapping and murder, essentially on the ground that the admission of evidence supportive of the conspiracy counts, which it had dismissed, had prejudicially infected the proceedings as to these remaining counts in the indictment. On April 21, 1975, Mr. Hart and Mr. Schutter jointly filed a motion to dismiss the remaining charges in the indictment, on the ground that a retrial would constitute double jeopardy, in violation of Article I of the Hawaii Constitution, and in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The trial court granted the motion as to defendants Pulawa and Kaohu but denied it as to defendants Huihui, Leota, and Wilson, explaining:

> "This would conclude the matter at this point were it not for the fact that as to the defendants Huihui, Wilson and Leota, the Court finds that there was consent to the

declaration of the mistrial. The arguments proposed by counsel for those defendants when the Court raised the question of mistrial indicates clearly that the defendants did not merely consent to, but urged the mistrial upon the Court. The mere written record does not reflect the vigor and zeal with which counsel urged the action upon the Court.

"Insofar as the defendants Pulawa and Kaohu are concerned, we are faced with another situation. Counsel for those defendants did not join in the argument propounded by counsel for Huihui, Wilson and Leota. While there would appear to be tacit joinder in the argument and consent to the mistrial, the cases regarding mistrial indicate quite strongly that more positive evidence of consent is required. There is insufficient showing of consent by those defendants indicated in this case. Therefore, as to the defendants Pulawa and Kaohu, the Court finds that a re-trial of the charges as to them would violate the constitutional prohibition against double jeopardy. Therefore, the charges will be dismissed as to defendants Pulawa and Kaohu.''

Defendants Huihui, Leota, and Wilson appeal from the amended order denying their motion to dismiss the indictment against them, and the State appeals from that portion of the order dismissing the charges against defendants Pulawa and Kaohu.

I

Where a mistrial is declared without the consent of the defendant, and there is an absence of manifest necessity for the mistrial, a retrial will be barred by double jeopardy. *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824); *United States v. Jorn*, 400 U.S. 470 (1971); HRS § 701-110(4). At issue initially, therefore, is, whether all of the defendants consented to the mistrial. The record shows that they did.

The State offered its first witness on June 21, 1974. The State's two principal witnesses were Clarence Handa and Roy Ryder. Mr. Handa finished testifying on June 25, 1974.

Mr. Ryder took the stand on July 1, 1974, and completed his direct testimony just before court adjourned on that day. On the following day, July 2, 1974, Mr. Schutter and Mr. Hart jointly filed a written motion for mistrial based on what they asserted was prejudicial testimony elicited by the State, over their objection, from Mr. Handa and Mr. Ryder. This motion for mistrial, with other defense motions,[1] was heard on July 10, 1974, after the State had rested its case. Mr. Schutter argued for the motion for mistrial, and on at least two occasions Mr. Hart was asked by the court if he joined in Mr. Schutter's motion for mistrial. Both times Mr. Hart replied in the affirmative. The trial court took the various motions under advisement, and on July 11, 1974, announced its rulings. The motion for mistrial was granted and it was Mr. Schutter who prepared the order "granting motion for mistrial," which was filed on July 15, 1974.

The order terminating the prosecution was clearly in response to a motion made by the defendants. That the trial court granted the motion on grounds not originally and expressly advanced by the defendants at the time they filed their written motion is not of material consequence. For that

---

[1] The following are excerpts from the transcript of the proceedings of July 10, 1974:

THE COURT: Very well. Who is going to argue first? Mr. Schutter or Mr. Hart?

MR. SCHUTTER: Well, we have three motions, Your Honor.

THE COURT: We'll get to that after we find out which one of you is going to argue first.

MR. HART: Well, it would depend on which motion the court —

THE COURT: I see. All right. Which motion, well, let's take the motion for mistrial first then.

MR. SCHUTTER: In connection, Your Honor, with the motion for a mistrial, I simply note for the record that we have filed a written motion for mistrial on the heels of a number of oral requests therefor, on July 2, 1974. That motion incorporated a memorandum and point of authorities and Exhibit A, that at the same time we filed that's entitled Supplemental Memorandum in Support of the Motion for Mistrial, and Exhibit A, thereto.

    \*    \*    \*    \*

MR. SCHUTTER: . . . We would submit the motion for mistrial based on that record.

THE COURT: Mr. Hart, you are not arguing on this motion? You're joining—

MR. HART: I join Mr. Schutter's motion. I see no reason to repeat his argument.

matter, the ground finally adopted by the court in granting the motion was predicated upon the very point raised by both Mr. Schutter and Mr. Hart in oral argument.[2] Having moved for a mistrial, and the trial court having considered their request and declared a mistrial, defendants Pulawa and Kaohu cannot now be heard to complain that the termination of the prosecution was without their consent. HRS § 701-110(4) (a); *see also, MacPherson v. State,* 533 P.2d 1103 (Alaska), *cert. denied* 423 U.S. 871 (1975); *People v. Kelly,* 132 Cal.App. 118, 22 P.2d 526 (1933).

Furthermore, the record shows that after the declaration of mistrial and before the jury was discharged, the State moved to be allowed to take an interlocutory appeal from the order and requested that the jury not be discharged pending the determination of the appeal. This was tantamount to a request for a stay of the order declaring a mistrial. Both Mr. Hart and Mr. Schutter, however, opposed the State's motion and urged instead that the jury should be discharged. Thereupon the court denied the State's request and advised the jury that "the court has granted the defense motion for mistrial which means that this trial is ended." Under these circumstances it cannot reasonably be said that the defendants did not consent to the declaration of mistrial and the resulting discharge of the jury. *Cf. Adkins v. Smith,* 205 So.2d 530 (Fla. 1968). From the record, we find that the trial court

---

[2]
    MR. HART: . . . Our position on that thing, Your Honor, is the jury has been unfortunately and unnecessarily infected with all that evidence and no instruction from the court could cure such a thing, and the court would have to declare a mistrial. It's as though we tried the case on top of the case and found that the case we tried on top of the case had no business being there in the first place; that the government had no business charging them and as a result it's a do over.

    \*    \*    \*    \*

    MR. SCHUTTER: Your Honor, had there been no conspiracy charged, many of the hearsay statements offered in evidence by the prosecution, hearsay statements primarily made by one defendant — I don't believe there is any evidence in the case that anybody else ever said anything — all of the evidence is things said by Mr. Pulawa, would not have been admissible in any way, shape or form, under any theory against my other client, Mr. Kaohu, or against any of Mr. Hart's three clients.

erred in holding that defendants Pulawa and Kaohu did not consent to the mistrial.

## II

Where the defendant consents to a declaration of mistrial, even though the consent is necessitated by judicial or prosecutorial error, the barrier to reprosecution is ordinarily removed. *United States v. Dinitz,* 424 U.S. 600 (1976); *United States v. Jorn, supra; United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976); *United States v. Jamison,* 505 F.2d 407, 410 (D.C. Cir. 1974). This principle is consistent with the double jeopardy consideration that the defendant should "retain primary control over the course to be followed in the event of such error." *Id.* at 609. In *Jorn,* the Supreme Court held:

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. 400 U.S. at 485.

However, where the defendant's mistrial motion is the necessary response to judicial or prosecutorial misconduct designed to avoid an acquittal, or is necessitated by deliberate misconduct which has for its intended purpose the denial of the defendant's constitutional right to a fair trial, reprosecution will be barred. *United States v. Dinitz, supra; United States v. Jorn, supra; United States v. Kessler, supra.* A basic policy underlying the Double Jeopardy Clause is to relieve the defendant of the substantial burdens imposed by multiple prosecutions. *United States v. Dinitz, supra.* Accordingly, where the defendant is provoked by judicial or prosecutorial overreaching into requesting a mistrial and his

motion is granted, he may not be retried for the same offense. *Id.* This result will necessarily obtain where the bad faith conduct charged has seriously and incurably prejudiced the defendant in his defense. *See United States v. Kessler, supra.*

Having determined that all of the defendants consented to the declaration of mistrial, we now reach the crucial issue of whether there was prosecutorial overreaching in this case. If there was, and serious and incurable prejudice to the defendants was its logical concomitant, then the motion to dismiss should have been granted for all defendants and not only as to defendants Pulawa and Kaohu.

. The thrust of the defendants' allegations of prosecutorial overreaching is that the State exercised bad faith in charging them with conspiracy; that as a proximate result of the State's conduct they were seriously prejudiced in their defense to the remaining counts of the indictment, inasmuch as certain prejudicial evidence adduced before the jury would not have been allowed by the court in the absence of the formal charges of conspiracy.[3]

We have examined the record, including the transcript of the proceedings in the circuit court, and have come to the conclusion that there was no prosecutorial overreaching in this case. The prosecution obviously erred in its assessment of the evidence available to support the formal charges of conspiracy. This error was compounded by its faulty interpretation of the applicable statute of limitations. But there was no deliberate misconduct in the charging of the conspiracy offenses. At worst, there might have been prosecu-

---

[3] The trial court apparently accepted the view of the defendants that the presence of a conspiracy charge in the indictment, or the absence thereof, was material to the question of admissibility:

There is also a growing body of thought in the field of criminal law that the charge of conspiracy, brought together with other charges of substantive crimes, gives to the government an advantage over the defendants which is unfair in the extreme. This is because, in particular, that on the basis of a conspiracy charge a statement made by one defendant can be used against other defendants who are alleged to be part of the conspiracy. It should be noted here that this is precisely what happened in the case at bar. All of the testimony indicated that all incriminating statements were made by defendant Pulawa.

torial negligence involved.[4] But simple negligence falls far short of the prosecutorial overreaching requisite to the imposition of the double jeopardy prohibition to a retrial. *Muller v. State,* 478 P.2d 822 (Alaska 1971); *United States v. Beasley,* 479 F.2d 1124 (5th Cir.) *cert. denied* 414 U.S. 924, *reh. denied* 414 U.S. 1052 (1973).

The defendants take the position that the State attempted deliberately to gain an unfair trial advantage by formally charging them with conspiracy. But the rule is that a conspiracy may always be shown as an evidentiary fact to prove participation in the substantive crime, and a formal charge in the indictment is not a necessary predicate to the admissibility of facts and circumstances showing the existence of a conspiracy to commit the principal offense charged. The law is clear in this regard. *See Territory v. Blackman,* 32 Haw. 460, 464-466 (1932); *State v. Yoshino,* 45 Haw. 640, 372 P.2d 208 (1962); *Territory v. Goto,* 27 Haw. 65 (1923); 16 Am.Jur.2d, *Conspiracy,* § 37. The charges of conspiracy in this case were directed towards the substantive crimes for which the defendants were also charged in the indictment. It would make no difference, therefore, on the question of evidentiary admissibility whether or not conspiracy to commit these particular offenses was formally charged.

The prosecution is generally entitled to show the entire history of a conspiracy to commit crimes, including the substantive crimes charged, from the time of its inception until its consummation. *Territory v. Blackman, supra; Territory v. Kitabayashi,* 41 Haw. 428, 434-436 (1956). It is entitled to adduce evidence of declarations made by a co-conspirator pursuant to and in furtherance of the conspiracy. Such declarations are admissible against the other conspirators.

---

[4] When ruling upon the motion for mistrial, the court made the following finding:

The evidence adduced at the hearings on Defendants' motion indicates clearly that there was prosecutorial negligence in preparing the indictment and in pre-trial preparation, in that there was little, if any, communication within the prosecutor's office regarding the theories of the deputies who prepared the indictment and the evidence to support the inclusion of the conspiracy charges. The ultimate result of this prosecutorial negligence was that there was no attempt during trial even to introduce evidence showing a continuing conspiracy.

*State v. Yoshino*, 45 Haw. 206, 364 P.2d 638 (1961); *Territory v. Blackman, supra; Territory v. Kitabayashi, supra.* Defendant Pulawa's declarations fall into this category.

The evidence of which the defendants complain was not limited to the formal charges of conspiracy. If admissible, it was admissible both as to the charges of conspiracy and as to the substantive crimes charged. We have examined the record, and while we are not called upon to decide the propriety of the separate evidentiary rulings of the trial court, we are constrained to observe that much of this evidence was admissible with respect to the substantive crimes charged. The reception of evidence touching upon the existence of a conspiracy is necessarily subject to the exercise of sound judicial discretion. *Territory v. Goto, supra.* If error was committed in the reception of certain of the evidence, it was judicial error. There was no judicial overreaching in this case, and none has been charged.

The amended order denying the motion to dismiss the charges against defendants Huihui, Leota, and Wilson is affirmed, and that part of the order granting the motion to dismiss the indictment against defendants Pulawa and Kaohu is reversed. Remanded.

*Roy Chang*, Deputy Prosecuting Attorney *(George Yamamoto*, Deputy Prosecuting Attorney, on the briefs) for plaintiff-appellant, cross appellee.

*Brook Hart* for defendants-cross appellants, *Huihui, Wilson* and *Leota.*

*David C. Schutter* for defendants-appellees *Pulawa* and *Kaohu.*