OPINION OF THE COURT
Herbert A. Posner, J.
This is a motion to dismiss the indictment because of "double jeopardy”. (CPL 40.20.) A mistrial was declared near the end of a jury trial when the Assistant District Attorney (hereafter ADA) pursued a line of questioning during direct examination of a rebuttal witness. The court had advised the ADA (on two prior occasions) that the issue he persisted on raising was improper and impermissible. The ADA, in opposing the motion to dismiss on double jeopardy grounds, argues that he "was attempting to explore an area crucial to the case within the guidelines set forth by the appropriate case law” and was not acting in bad faith.
the legal issue
Under both Federal and State law, "a motion by the defen *251 dant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant’s motion is necessitated by prosecutorial or judicial error.” (United States v Jorn, 400 US 470, 485; People v Key, 45 NY2d 111, 117.) However, as the court observed in a footnote in the Jorn case (supra, p 485, n 12), "where a defendant’s mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred.” Later, in United States v Dinitz (424 US 600, 611), the court concluded that: "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,’ United States v. Jorn, supra, at 485, threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict’ the defendant. Downum v. United States, 372 U. S., at 736. See Gori v. United States, 367 U. S., at 369; United States v. Jorn, supra, at 489 (Stewart, J., dissenting); cf. Wade v. Hunter, 336 U. S., at 692.”
This standard was refined by the United States Supreme Court in Oregon v Kennedy (456 US 667). The majority opinion in that case noted that the language in Dinitz (supra) seemed "to broaden the test from one of intent to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct’ ” (p 674). The majority then rejected such an expansion and ruled that: "Only where the governmental conduct in question is intended to 'goad’ the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion” (p 676). Thus, when the defendant moves for a mistrial, retrial is barred under Federal constitutional law, on double jeopardy grounds, only if "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial” (p 679). This court could not find any reported New York State case in which retrial has been barred following a mistrial declared on motion of the defendant.
The ADA in this case claims that he did not act in bad faith nor was it his intent to provoke a mistrial and, therefore, retrial of the defendant is not barred. Inasmuch as the court hearing this motion is the same court that granted the mistrial and therefore has firsthand knowledge of the facts, a *252 separate evidentiary hearing to determine why the prosecutor acted as he did is not necessary.[1]
THE PACTS
The defendant, James Copeland, was charged with criminal possession of a weapon in the third degree. Prior to the trial, a Huntley hearing was ordered as to a statement alleged to have been made by the defendant when he was interviewed by Detective Finnegan of the Career Criminal Investigation Unit, several hours after he was arrested by Police Officer Gumbs. At that hearing, which was held on October 29, 1984, the People consented to suppression of the defendant’s statement on their direct case, because the statement was exculpatory in nature.
On March 28, 1985, a jury was selected and the trial of the defendant commenced. The arresting officer, Kenneth Gumbs, was called as a witness by the People and then the defendant testified on his own behalf. The defendant related that he had exited his car and was walking towards a store to buy cigarettes when he saw an object lying on the sidewalk near an oil drum that was used as a garbage pail. As he picked up the object and saw that it was a gun, he heard a passerby yell "gun”, and Police Officer Gumbs immediately came towards him with his gun drawn and placed him under arrest.[2]
During cross-examination, the ADA elicited from the defendant the fact that on the day he was arrested, he had made a statement to Detective Finnegan to the effect that he had just picked up the gun when he was arrested. The ADA then attempted to establish the time that this statement was made. Two objections to this line of questioning were sustained by the court and, in an off-the-record side bar conference, the court advised the prosecutor that he could not impeach the defendant’s testimony by showing that the defendant had remained silent when he was arrested by Officer Gumbs and did not explain his possession of the gun to Detective Finnegan until several hours later. Earlier, during direct examination of Police Officer Gumbs, the prosecutor had attempted *253 three times to establish that the defendant had remained silent following his arrest and objections were sustained each time. This persistent line of questioning followed a Bench conference, requested by the ADA, at which he unsuccessfully attempted to gain permission to pursue this issue with Officer Gumbs.[3] Following the side bar conference, the ADA continued with cross-examination of the defendant regarding an alleged inconsistency between his trial testimony and the statement he had made to Detective Finnegan. According to the prosecution, the defendant had told Detective Finnegan that he saw a "dude” drop the gun by the oil drum, whereas he testified that he had found the gun lying near the oil drum and denied, on cross-examination, that he ever said he saw someone drop it there.
At the conclusion of the defendant’s cross-examination, the defense rested and the trial was continued to the following day for possible rebuttal by the People. There followed an on-the-record discussion, outside the presence of the jury, during which the prosecutor took issue with the court’s rulings and stated that he felt the court had put him "in a bad position.” He particularly objected to the ruling that prevented him from showing that the defendant had remained silent immediately following his arrest and took "extreme exception” to it, although he did not submit any authority to support his position.
The defendant in this case had not utilized his statement to Detective Finnegan, to bolster his trial testimony. It was the prosecutor who interjected the statement into the case, during cross-examination of the defendant, and then sought to impeach the defendant’s trial testimony, by showing that the statement was not made until several hours after the defendant was arrested. The court’s ruling that this was improper accorded with the decision in People v Conyers (52 NY2d 454, 457) that "our State rules of evidence preclude the use of a defendant’s pretrial silence to impeach his trial testimony.” (See also, People v Davis, 61 NY2d 202.)
In Conyers (supra, p 458), the prosecutor sought to impeach the defendant by showing that he had failed "to explain the situation to the arresting officer immediately upon his arrest.” *254 In this case, the prosecutor also sought to impeach the defendant by showing that he had failed to explain his possession of the gun to the arresting officer. However, unlike Conyers, the defendant in this case did make an explanation when he was interviewed by Detective Finnegan of the Career Criminal Unit. Since there was no evidence that the defendant had been questioned by the arresting officer or any other officer, before Detective Finnegan interviewed him, his silence following arrest had even less probative value and more potential for prejudice than did the evidence of defendant’s pretrial silence in the Conyers case. Therefore, introduction of evidence of the defendant’s postarrest silence in this case would have clearly deprived the defendant of a fair trial.
Before counsel left the courtroom on March 28, 1985, the court learned that the ADA was planning to call Detective Finnegan as a rebuttal witness and reminded the prosecutor, off the record, that the detective would not be permitted to testify concerning the length of time between the defendant’s arrest and his statement to the detective. The trial resumed the following day and Detective Finnegan was called as a rebuttal witness. The detective related what he recalled to be the substance of the statement the defendant had given him, including the alleged inconsistency between that statement and the defendant’s trial testimony. Then, taking both the court and defense counsel by surprise, the prosecutor asked the detective not only the time of defendant’s arrest and the time the statement was made, but also whether it was the first statement made by the defendant following his arrest. An objection was made by defense counsel to the last question and it was sustained, but not before the detective had responded in the affirmative.
In the discussion that followed, the prosecutor, for the first time, submitted authority for his contention that the defendant’s silence following his arrest was admissible to impeach his trial testimony. He cited one case (People v Savage, 50 NY2d 673) which held that a defendant, who has been given the Miranda warnings and has elected to waive his right to remain silent and narrates the essential facts of his involvement, may be cross-examined about his failure to inform the police at that time of exculpatory circumstances to which he later testifies at trial. That case clearly did not support the use of this defendant’s silence following arrest to impeach his trial testimony and, after observing that it was inapposite, the court granted the defendant’s motion for a mistrial.
*255 CONCLUSION
The ADA had been informed several times by the court that he could not use the fact that the defendant had remained silent until he was questioned by Detective Finnegan, as direct evidence or to impeach defendant’s trial testimony. Nevertheless, during rebuttal, the ADA asked questions of the detective specifically directed at impeaching the defendant by showing that he did not explain his possession of the gun until several hours after he was arrested.
Even if the prosecutor’s contention that he believed he was exploring a permissible area is accepted, he was not acting in good faith when he continued to explore that area after he had been explicitly admonished by the court to desist. As Justice Rehnquist acknowledged in the majority opinion in Oregon v Kennedy (456 US 667, 675, supra), one of the methods the trial court has available to it to prevent the introduction of objectionable evidence is "an admonition to desist from a particular line of inquiry.” When a prosecutor, as in this case, deliberately ignores such an admonition, there is a strong inference that he intends to provoke a mistrial. (See, dissenting opn in People v Conlon, 66 AD2d 823, 824.)
In his concurring opinion in Oregon v Kennedy (supra, p 680), Justice Powell, agreeing with the intention standard adopted by the majority, pointed to such factors as the absence of a pattern of prosecutorial misconduct and the prosecutor’s surprise at the defendant’s motion for mistrial as the type of "objective facts and circumstances”, extracted from the record which a court should take under consideration on a double jeopardy motion. In this case, the ADA made repeated efforts to introduce evidence the court had found objectional and pursued a line of questioning with a rebuttal witness after having been explicitly instructed to desist from that type of inquiry. Clearly, his actions were not the result of mistake or error. (See, Mitchell v Smith, 633 F2d 1009; Price v Harris, 497 F Supp 571.) They were a deliberate, blatant refusal to accept the court’s ruling and the motion for a mistrial came as no surprise to him.
Ultimately, the determination of whether or not the prosecutor intended to provoke a mistrial is a factual finding which the trial court is in the best position to make. In this case, the court finds that the ADA intended to provoke a mistrial when he questioned Detective Finnegan concerning the defendant’s postarrest silence. It was the third time in the course of a *256 brief trial that he had brought the jury’s attention to this irrelevant fact. If he, in good faith, believed that People v Savage (supra) supported his contention that it was admissible and did not intend to provoke a mistrial, he would have presented his purported authority to the court before he questioned Detective Finnegan. It is clear from the record that the prosecutor felt that he was being treated unfairly by the court and he questioned the detective about defendant’s post-arrest silence in deliberate defiance of the court’s explicit instructions. The court cannot accept as genuine his feeble protestation that he was relying on a case that clearly did not support his position. (Cf. Matter of Potenza v Kane, 79 AD2d 467, Iv denied 53 NY2d 606.)
The defendant in this case, a middle-aged man with a bad limp that required him to use a cane, made a sympathetic appearance. Having been unable to impeach him, except with a minor inconsistency between his trial testimony and the statement he made to Detective Finnegan, the prosecutor had good cause to believe that he would be acquitted. The outrage expressed by the prosecutor at the court’s ruling that the defendant’s postarrest silence could not be used to impeach his trial testimony clearly supports this conclusion. Accordingly, the court finds that the prosecutor intended to provoke a mistrial when he questioned Detective Finnegan about the defendant’s silence. Therefore, the defendant’s motion to dismiss the indictment on grounds of double jeopardy is granted.

. Where the double jeopardy motion is not heard by the same judge who granted the mistrial, an evidentiary hearing is necessary to determine whether the prosecutor intended to provoke the mistrial. (See, Oregon v Kennedy, 456 US 667, 669, n 2; Petrucelli v Coombe, 569 F Supp 1523, dismissed on other grounds 735 F2d 684.)

. In essence, the defendant was raising the defense of "temporary and innocent possession.”

. The court: "You heard me sustain the objection three times. Which means this line of questioning is inadmissible evidence for legal reasons which we discussed at the bench. If you persist any further, I am going to send the jury out and let the defendant make proper motions under these circumstances.”