STATE OF HAWAII, Plaintiff-Appellee, *v.* RUDOLPH VALENTINO HOKE, also known as Tino, Rudy and Moku, and CARL J. MIGUEL, Defendants-Appellants

NOS. 11233 & 11234

(CRIMINAL NO. 60444)

FEBRUARY 2, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

The questions posed in these consolidated appeals are (1) whether the retrial of defendants-appellants Carl J. Miguel and Rudolph Valentino Hoke on charges of robbery in the first degree pursuant to section 708-840(1)(b)(ii) of the Hawaii Revised Statutes (HRS) violated their constitutional rights against double jeopardy and (2) whether in such retrial the court improperly instructed the jury that "dangerous instrument" means any firearm. We answer both questions in the negative and affirm the judgment below.

I.

Defendants allegedly robbed Uncle John's Family Restaurant on October 28, 1983. On October 29, 1983, Defendants were arrested for an unrelated robbery and credit card offense. During the first joint trial, Defendant Hoke filed a motion *in limine* to preclude the presentation of evidence to the jury which would reveal that they had been arrested, for offenses other than what they were being tried for, the day following the robbery. The motion was granted.

During trial, the State called Detective James Souza who presented testimony of a photographic line-up. On cross-examination by defendant Miguel, the following colloquy took place:

Q: Was the idea of a live line-up, in other words, a physical line-up with bodies, discussed at all?

A: Yes.

Q: Why wasn't that method chosen?

A: Because they were arrested and charged for other crimes, and they already gone from HPD custody to 0 triple C.

Q: So they could have been brought down for line-up, right?

A: Well, we would have to place them under arrest for some of the other investigations to bring them back to the station to conduct a line-up regarding these investigations.

Defendants immediately moved for a mistrial. After discussion at the bench, the court denied the motions for mistrial and gave a cautionary instruction. Defendants renewed their motions for a

mistrial at the close of the State's case and once more prior to closing argument. These motions were denied.

Subsequently, in the course of presenting his closing argument, the prosecutor stated that "Defendants robbed places together." Defendants again moved for a mistrial. The court orally granted a mistrial on February 22, 1985.

Following the declaration of a mistrial, Defendants moved to dismiss the indictment claiming, since prosecutorial misconduct was responsible for causing the mistrial, a retrial was barred by double jeopardy. The court denied the motion on April 26, 1985.

Defendants were jointly retried in December 1985. During *in camera* proceedings to settle instructions, Defendants objected to proposed instructions defining the elements of robbery in the first degree. They contended that the jury should be instructed that a dangerous instrument was a firearm which, "in the manner it is used or threatened to be used is capable of producing death or serious bodily injury." However, the court instructed the jury that "[d]angerous instrument means any firearm." On December 12, 1985, the jury returned verdicts finding Defendants guilty as charged. Defendants thereafter brought these appeals.

II.

"Of nearly universal application is the rule that double jeopardy rights are deemed waived when a defendant successfully moves for a mistrial." *State v. Miyazaki,* 64 Haw. 611, 618, 645 P.2d 1340 (1982). *See* Annot., 98 A.L.R.2d 997 (1980). "However, where the defendant's mistrial motion is the necessary response to judicial or prosecutorial misconduct which has for its intended purpose the denial of the defendant's constitutional right to a fair trial, reprosecution will be barred." (Citations omitted). *State v. Pulawa,* 58 Haw. 377, 382, 569 P.2d 900 (1977), *cert. denied,* 436 U.S. 925, 98 S. Ct. 2818, 56 L. Ed. 2d 768 (1978).

In *Pulawa* the appellants claimed that the prosecution had acted in bad faith in charging them with conspiracy in order to present otherwise impermissible evidence before the jury and that such evidence prejudiced them as to the other charges. 58 Haw. at 383. After reviewing the record, this court noted that the prosecution

had erred in its assessment of evidence necessary to support a conspiracy charge and its interpretation of the applicable statute of limitation. *Id.*

> But there was no deliberate misconduct in the charging of the conspiracy offenses. At worst, there might have been prosecutorial negligence involved. But simple negligence falls far short of the prosecutorial overreaching requisite to the imposition of the double jeopardy prohibition to a retrial.

58 Haw. at 383-84, 569 P.2d at 905-06 (citations omitted).

The federal court cases relied upon in *Pulawa* have since been superseded. The United States Supreme Court, in a plurality opinion, has recently stated that prosecutorial misconduct will bar reprosecution only where, "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S. Ct. 2083, 72 L. Ed. 2d 416, 427, (1982). Thus, in the federal courts defendants seeking to escape retrial must bear the burden of demonstrating that the prosecution *intended* a mistrial to result.

Defendants urge this court to adopt a more liberal test that would expand the instances wherein a reprosecution will be barred. They suggest that a retrial not be permitted where: (1) improper official conduct takes place which is so prejudicial as to require a mistrial; and (2) the official knows the conduct is improper and prejudicial and either knows or is indifferent to the resulting mistrial or reversal. *See State v. Kennedy,* 295 Or. 260, 666 P.2d 1316 (1983); *Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261 (1984). This more liberal standard is at least partly based on the view that requiring a defendant to prove a specific intent in the prosecutor is too great a burden. *See Oregon v. Kennedy,* 456 U.S. at 688, 102 S. Ct. at 2096, 72 L. Ed. 2d at 433 (Stevens, J., concurring), *Pool v. Superior Court,* 677 P.2d at 271.

In *Pulawa* this court ruled that in order for the double jeopardy prohibition to a retrial to be imposed defendants must show that the prosecution intended to provoke a mistrial. We now affirm our holding in *Pulawa.* We do not take lightly our role in safeguarding the rights of defendants against prosecutorial overreaching. *See State v. Marsh,* 68 Haw. 679, 728 P.2d 1301 (1986). The rule stated in *Pulawa* remains sound and is consonant with that adopted by the

federal courts. Defendants have failed to present us with any compelling reasons for the adoption of a more liberal standard. Nonetheless, it appears that under either standard, Defendants have failed to show prosecutorial impropriety to the extent that a retrial should be barred.

It is true that the prosecutor violated the court's order by stating that Defendants "rob places together." However, it appears that this was one stray statement made in closing argument. There is no evidence of premeditation or other intentional wrongdoing. The retrial of Defendants did not violate the constitutional prohibition against double jeopardy.

### III.

The trial court instructed the jury, *inter alia,*

The four elements are: (1) The Defendants Rudolph Hoke and Carl Miguel were in the course of committing theft; (2) They were armed with a dangerous instrument; (3) They threatened by word or conduct imminent use of force against Dave Oshiro; (4) They did so with the intent to compel acquiesence [sic] to the taking or escaping with the property. . . . *Dangerous instrument means any firearm.* (Emphasis added).

Defendants claim that it was reversible error to omit the statutory language defining dangerous weapon to be a firearm, or other weapon, "which in the manner it is used or threatened to be used, is capable of producing death or serious bodily injury." HRS § 708-840(2) (1976).[1]

Defendants contend the omission of the statutory language was reversible error under *State v. Napeahi,* 57 Haw. 365, 556 P.2d 569 (1976). In *Napeahi,* the defendant was charged with using a b-b shot pistol (resembling an "Army .45 caliber") and a pellet pistol. There, the trial court expressly instructed the jury that "as a matter of law both guns are dangerous instruments within the meaning of the

---

[1] The entire text of HRS § 708-840(2) provides:
As used in this section, "dangerous instrument" means any firearm, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

law of Robbery in the First Degree." 57 Haw. at 376, 556 P.2d at 576. The court held that the defendant's right to trial by jury had been violated and reversed the convictions for first degree robbery. In reversing, the court stated:

> In our opinion, an instrument, within the clear import of the provisions of Section 708-840, does not attain the character of a dangerous instrument *unless* "in the manner it [the instrument] is used or threatened to be used is capable of producing death or serious bodily injury."
>
> The statute creates factual criteria requiring the prosecution to adduce evidence meeting the criteria. *It is then clearly a question of fact for the jury to resolve* whether the prosecution has proved an essential element of the crime of which defendant is tried.

*Id.* (Emphasis added).

Defendants fail to recognize the distinction between the b-b shot pistol and pellet pistol used in *Napeahi* and the chrome-plated automatic involved in the present case. The former propel their projectiles by the use of compressed air. The latter, however, propels projectiles by the use of gunpowder. It is this use of explosives which brings the latter into the category of weapons known as "firearms." *See The Random House College Dictionary,* revised edition (1979). *See also State v. Medeiros,* 4 Haw. App. 248, 665 P.2d 181 (1983); HRS § 134-1 (1985).

In *State v. Herrera,* the defendants alleged as error the trial court's denial of their motion for a judgment of acquittal to a charge of robbery in the first degree. 63 Haw. 405, 629 P.2d 626 (1981). Defendants had so moved on the grounds of lack of sufficient evidence to prove that the gun was a dangerous instrument since there had been testimony during the trial that the gun used in the robbery was unloaded. The defendants in *Herrera,* like Defendants in the present case, urged that the "which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury" language of section 708-840(2) modifies the word "firearm." In rejecting this interpretation of the statute, this court stated:

> We do not see any reason to place such a strained construction as appellants urge on the language of *H.R.S.* § 708-840(2). To do so, we would have to ignore that a gun is commonly

known as a firearm and regarded by society as a dangerous device by both the reasonable man and the person at whom it is pointed. A rational, sensible and practicable interpretation is preferred to one which is unreasonable or impracticable. *State v. Soto,* 63 Haw. 317, 627 P.2d 279 (1981).

63 Haw. at 410-11, 629 P.2d at 630.[2]

It is patently clear that section 708-840(2) frames "dangerous weapon" in the disjunctive and the word "firearm" is not subject to any qualifying language. Firearms are *per se* dangerous weapons within the meaning of section 708-840. Chrome-plated automatics are firearms. The court below properly instructed the jury.

The other issue raised by Defendants is without merit.

We note for the record that defendant Miguel was not represented by counsel during oral argument before this court. His attorney, Reinhard Mohr, was impermissibly absent. For his failure to appear, this court intends to impose sanctions and to take corrective action. However, since this court has fully considered the issues raised on behalf of defendant Miguel, which were identical to the issues raised by defendant Hoke, in the course of argument and in the course of reviewing defendant Miguel's opening and reply briefs, we find that counsel's absence did not result in prejudice to defendant Miguel.

The judgment below, as to both Defendants, is affirmed.

*Edward K. Harada,* Deputy Public Defender for Defendant-Appellant Hoke.

*Reinhard Mohr* on the briefs for Defendant-Appellant Miguel.

*G. Cher Foerster (Ellen P. Godsey* with her on the briefs), Deputy Prosecuting Attorneys for Plaintiff-Appellee.

---

[2] The United States Supreme Court has recently held that an unloaded handgun is a "dangerous weapon" as a matter of law under the federal bank robbery statute. *McLaughlin v. United States,* 476 U.S. \_\_\_\_, 106 S. Ct. 1677, 90 L. Ed. 2d 15, 54 U.S.L.W. 4407 (1986).