884 P.2d 729

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Victor W. BARANCO and Cynthia A. Baranco, Defendants–Appellants.**

No. 16911.

Supreme Court of Hawai'i.

Nov. 15, 1994.

Peter C. Wolff, Jr. of Hart & Wolff, Honolulu, for defendants-appellants.

Don Fudo, Deputy Prosecuting Atty., City and County of Honolulu, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Defendants–Appellants Victor W. Baranco and Cynthia A. Baranco (collectively Defendants) were indicted by Plaintiff–Appellee State of Hawai'i (Prosecution) for promoting a dangerous drug in the second degree in violation of Hawai'i Revised Statutes (HRS) § 712–1242(1)(a) (Supp.1992). Following a mistrial, Defendants filed a motion to dismiss the indictment with prejudice, arguing that a retrial would violate their constitutional right against double jeopardy. Defendants appeal the circuit court's order denying their motion to dismiss the indictment with prejudice. We affirm.

## I. *FACTS*

Victor Baranco was a co-founder of More University, a private educational institution involved in experimental lifestyles and the study of social interaction, headquartered in California. He and his wife, Cynthia Baranco, were residents of More House Hawaii, an experimental living situation located on the North Shore of Oahu, which was affiliated with More University.

On January 18, 1989, police conducted a search of More House Hawaii pursuant to a valid search warrant. While conducting a search of Defendants' bedroom, the police recovered, among other things, approximately fifty units of the drug lysergic acid diethylamide (LSD) hidden in a Bible.

Consequently, Defendants were indicted for possessing a dangerous drug in violation of HRS § 712–1242(1)(a). Before trial, the circuit court granted Defendants' motion in limine to exclude certain evidence obtained during the search and to limit cross-examination regarding Defendants' prior "bad acts" and "other crimes."

On November 10, 1992, Defendants' jury trial began. Defendants' called as their first witness, Anthony Maxfield, the manager of More House Hawaii. During cross-examination, Maxfield testified that there were hard feelings between Wayne and Hannah Steele (also residents of More House) and Defendants. The Prosecutor then asked "[and] isn't it true some of that hard feelings arise out of the accusation that the Steeles made[,] that they were forced into prostitution by the More House?"[1] Defendants immediately moved for a mistrial, which the circuit court granted.

Thereafter, Defendants filed a motion to dismiss the indictment with prejudice, arguing that a retrial would violate their constitutional guarantee against double jeopardy. The circuit court denied Defendants' motion. Defendants then moved for leave to file a notice of interlocutory appeal pursuant to HRS § 641–17 (1985), which the circuit court also denied. On March 4, 1993, the circuit court filed its Findings of Fact, Conclusions of Law and Order Denying Defendants' Motion to Dismiss the Indictment with Prejudice.

Thereafter, Defendants filed a notice of appeal. The Prosecution moved to dismiss Defendants' appeal in the circuit court, which the circuit court denied. The Prosecution

---

1. The Prosecutor's question was based on a newspaper article which referred to a civil libel lawsuit filed by More University against an Allan Steele concerning allegations of forced prostitution.

then filed a motion to dismiss Defendants' appeal in the Hawai'i Supreme Court, arguing that the supreme court lacked jurisdiction to consider the appeal. On June 1, 1993, we denied the Prosecution's motion "without prejudice to the [Prosecution] challenging the issue of jurisdiction in its answering brief." On June 14, 1993, we denied the Prosecution's motion for reconsideration.

## II. *DISCUSSION*

### A. *Appellate Jurisdiction*

■ We address, first, the issue of appellate jurisdiction. Generally, an appeal in a criminal case is permitted only after a final judgment of the circuit court has been rendered. *See* HRS § 641–11.[2] There is, however, an exception to this finality of judgment requirement. HRS § 641–17 (1985) provides in relevant part:

> [A]n appeal in a criminal matter may be allowed to a defendant from the circuit court to the supreme court ... from a decision denying a motion to dismiss or from other interlocutory orders, decisions, or judgments, whenever the judge in the judge's discretion may think the same advisable for a more speedy termination of the case. *The refusal of the judge to allow an interlocutory appeal to the appellate court shall not be reviewable by any other court.*

(Emphasis added.) Because the circuit court has not rendered a final judgment, and because HRS § 641–17 specifically prohibits any court from reviewing a judge's refusal to allow an interlocutory appeal, the Prosecution contends that this court lacks jurisdiction to consider Defendants' appeal.

Defendants contend, on the other hand, that there is another exception to the finality of judgment requirement of HRS § 641–11. Specifically, Defendants argue that an order

denying a motion to dismiss an indictment based on double jeopardy grounds falls into the "collateral order" exception to the final judgment rule. The collateral order exception was initially announced in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under this exception, certain orders fall "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26.

In support of their argument that the collateral order exception applies to this case, Defendants point to the United States Supreme Court's decision in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). In *Abney*, the Supreme Court permitted an interlocutory appeal of an order denying a pretrial motion to dismiss the indictment on double jeopardy grounds. *Id.* at 662, 97 S.Ct. at 2041. The Supreme Court held that the district court's order was a "final decision" within the meaning of 28 U.S.C. § 1291,[3] and thus immediately appealable. *Id.* at 651, 97 S.Ct. at 2034. Although an order denying a motion to dismiss an indictment on double jeopardy grounds lacks the finality traditionally considered indispensable to appellate review, the Supreme Court found that such an order falls within the "collateral order" exception to the final judgment rule announced in *Cohen. Id.* at 663, 97 S.Ct. at 2042.

The Supreme Court explained that, under the collateral order exception, an interlocutory order is appealable if it: (1) fully disposes of the question at issue; (2) resolves an issue completely collateral to the merits of the case; and (3) involves important rights which would be irreparably lost if review had

---

**2.** HRS § 641–11 (Supp.1992) provides:

> **From circuit courts.** Any party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawai'i Rules of Appellate Procedure. The sentence of the court in a criminal case shall be the judgment. All appeals, whether heard by the intermediate ap-

pellate court or the supreme court, shall be filed with the clerk of the supreme court and shall be subject to one filing fee.

**3.** 28 U.S.C. § 1291 provides in pertinent part that "[t]he courts of appeals shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States[.]" (Emphasis added.)

to await a final judgment. *Abney,* 431 U.S. at 658–659, 97 S.Ct. at 2039–2040. The Court concluded that a decision on a double jeopardy motion fully disposes the question at issue and is collateral to the issue of guilt. *Id.* at 659, 97 S.Ct. at 2040. The Court further stated that the rights protected by the double jeopardy clause would be "significantly undermined" if appellate review were postponed until after trial. *Id.* at 660, 97 S.Ct. at 2040. Indeed, the Supreme Court "has long recognized that the Double Jeopardy clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense." *Id.* (emphasis in original).

> [E]ven if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be re-

viewable before that subsequent exposure occurs.

*Id.* at 661–62, 97 S.Ct. at 2041 (footnote omitted) (emphasis in original).

■ The collateral order exception, initially announced in *Cohen, supra,* was subsequently adopted by this court. *See, e.g., International Sav. & Loan Ass'n v. Woods,* 69 Haw. 11, 731 P.2d 151 (1987); *Association of Owners v. Swinerton & Walberg Co.,* 68 Haw. 98, 705 P.2d 28 (1985); *MDG Supply, Inc. v. Ellis,* 51 Haw. 480, 463 P.2d 530 (1969), *reh'g denied,* 51 Haw. 479, 463 P.2d 525 (1969), *cert. denied,* 400 U.S. 868, 91 S.Ct. 99, 27 L.Ed.2d 108 (1970). Although we have not yet applied the collateral order exception to appeals from criminal cases, we find the rationale of the Supreme Court's decision in *Abney* compelling.[4] We agree that "if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his [or her] double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Abney,* 431 U.S. at 662, 97 S.Ct. at 2041 (footnote omitted) (emphasis in original). Therefore, we adopt the *Abney*

4. We note that a majority of jurisdictions recognize a defendant's right to an interlocutory appeal of a court's denial of a pretrial motion which raises a double jeopardy claim. However, state courts have varied in their application of *Abney.*

Because of the statutory basis for the United States Supreme Court's decision in *Abney,* several state courts have determined that *Abney* does not promulgate a federal constitutional requirement of immediate review of a pretrial motion that raises a double jeopardy claim. *See Burleson v. State,* 552 So.2d 186 (Ala.Crim.App.1989); *State v. Joseph,* 92 N.C.App. 203, 374 S.E.2d 132 (1988), *cert. denied,* 324 N.C. 115, 377 S.E.2d 241 (1989); *State v. Miller,* 289 S.C. 426, 346 S.E.2d 705 (1986). *Cf. People ex rel. Mosley v. Carey,* 74 Ill.2d 527, 25 Ill.Dec. 669, 387 N.E.2d 325, *cert. denied sub nom. Mosley v. Illinois,* 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979) (holding that *Abney* was not binding, but stating that a criminal defendant who raises a meritorious double jeopardy claim may file a motion for leave to file an original petition for writ of prohibition, mandamus, or habeas corpus, as appropriate).

Other jurisdictions, citing *Abney,* have permitted immediate review of double jeopardy claims. *See Griffin v. State,* 545 So.2d 729 (Miss.1989); *State v. King,* 131 N.H. 173, 551 A.2d 973 (1988); *State v. Janvrin,* 121 N.H. 370, 430 A.2d 152

(1981); *State v. Sanchez,* 532 A.2d 956 (R.I. 1987); *State v. Choate,* 151 Ariz. 57, 725 P.2d 764 (App.1986); *Gray v. State,* 36 Md.App. 708, 375 A.2d 31 (1977).

Other courts, while citing *Abney,* have concluded that a direct appeal or other form of review was available under state law. *See Nalbandian v. Superior Court,* 163 Ariz. 126, 786 P.2d 977 (App. 1989), *cert. denied,* 498 U.S. 997, 111 S.Ct. 554, 112 L.Ed.2d 562 (1990) (reviewing through Special Action Procedure provided by statute); *County Court of El Paso v. Ruth,* 194 Colo. 352, 575 P.2d 1 (1977) (reviewing through writ of prohibition); *Commonwealth v. Chatfield–Taylor,* 399 Mass. 1, 502 N.E.2d 512 (1987) (petition for relief from the single justice); *Ex Parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App.1982) (reviewing through writ of habeas corpus). *Cf. State v. Milenkovich,* 236 Neb. 42, 458 N.W.2d 747 (1990) (declining to reach issue whether immediate appeal of an order denying a double jeopardy claim was constitutionally mandated, because under state statute such an order was a final order); *State v. Mestas,* 93 N.M. 765, 605 P.2d 1164 (App.1980) (holding no right to appeal as final judgment, but did not reach question of whether final judgment should have been construed to include an order denying a double jeopardy claim because pursuant to statutory authority court of appeals was permitted to grant interlocutory appeals).

rationale and hold that the collateral order exception to the final judgment rule permits an interlocutory appeal of an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds.

### B. Does Retrial Violate Defendants' Right Against Double Jeopardy?

Defendants contend that the circuit court erred in denying their motion to dismiss the indictment with prejudice because a retrial would violate their constitutional right against being placed twice in jeopardy for the same offense. On appeal, the issue whether a defendant's constitutional right against double jeopardy will be violated unless the indictment is dismissed is a question of law. *United States v. Bernhardt*, 831 F.2d 181, 182 (9th Cir.1987). We review a question of law under the right/wrong standard. *In re Estate of Holt*, 75 Haw. 224, 857 P.2d 1355, *reconsideration denied*, 75 Haw. ——, 863 P.2d 989 (1993).

Article I, section 10 of the Hawai'i Constitution and the fifth amendment to the United States Constitution provide that no person shall twice be put in jeopardy for the same offense. Although "[it] is generally accepted that in jury trials, jeopardy attaches when the jury is impaneled and sworn," *State v. Miyazaki*, 64 Haw. 611, 617, 645 P.2d 1340, 1345 (1982), the guarantee provided by the double jeopardy clause is not absolute. Generally, "double jeopardy rights are deemed waived when a defendant successfully moves for a mistrial." *State v. Hoke*, 69 Haw. 44, 46, 731 P.2d 1261, 1262 (1987) (quoting *State v. Miyazaki*, 64 Haw. 611, 618, 645 P.2d 1340, 1346 (1982)).

However, the general rule is subject to an exception. In *State v. Pulawa*, 58 Haw. 377, 569 P.2d 900 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978), we held that retrial is barred where "the defendant's mistrial motion is the necessary response to judicial or prosecutorial misconduct designed to avoid an acquittal, or is necessitated by deliberate misconduct which has for its intended purpose the denial of the defendant's constitutional right to a fair trial[.]" *Pulawa*, 58 Haw. at 382, 569 P.2d at 905; *accord State v. Hamala*, 73 Haw. 289, 834

P.2d 275 (1992); *State v. Hoke*, 69 Haw. 44, 731 P.2d 1261 (1987).

Against this background, Defendants contend that the Prosecutor intentionally asked improper questions during cross-examination to provoke Defendants into moving for a mistrial to avoid an acquittal. In *Pulawa*, we stated that the inquiry necessarily centers upon the Prosecutor's conduct prior to the mistrial in order to determine if there was prosecutorial misconduct designed to avoid an acquittal. *See Pulawa*, 58 Haw. at 383–84, 569 P.2d at 905–06. If such intentional misconduct is found, a second trial is barred by the double jeopardy clause notwithstanding the fact that the Defendants requested the mistrial. *Id.* In this regard, we recognize that "[ultimately], the determination of whether or not the Prosecutor intended to provoke a mistrial is a factual finding which the trial court is in the best position to make." *People v. Copeland*, 129 Misc.2d 250, 255, 492 N.Y.S.2d 853, 857 (N.Y.Sup.Ct.1985). *Accord Oregon v. Kennedy*, 456 U.S. 667, 669 n. 1, 102 S.Ct. 2083, 2086 n. 1, 72 L.Ed.2d 416 (1982). Thus, we apply the clearly erroneous standard to the circuit court's factual findings. *AMFAC, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 115, 839 P.2d 10, 27, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

As evidence of the Prosecutor's intentional misconduct, Defendants contend that the Prosecutor directly violated the trial court's directive that he seek a ruling from the court prior to asking questions regarding the forced prostitution claim. Defendants also assert that the Prosecutor's question violated the trial court's in limine ruling because the question raised an issue of a prior "bad act" or "other crimes."

To support their position, Defendants rely on a number of cases in which the court found "prosecutorial overreaching" where the Prosecutor had knowingly violated a ruling on a motion in limine or other admonition of the court. *See United States v. Broderick*, 425 F.Supp. 93 (S.D.Fla.1977) (barring retrial after Prosecutor in opening statement mentioned prohibited testimony; reasoning that

testimony was clearly prohibited, since the prosecutor agreed not to elicit such testimony and had been twice cautioned not to do so because of its prejudicial and hearsay nature); *Copeland,* 129 Misc.2d at 255, 492 N.Y.S.2d at 857 (barring retrial where prosecutor persisted in introducing evidence the court found "objectionable" and for pursuing a line of questioning with a rebuttal witness after having been explicitly instructed to desist from that type of inquiry); *People v. Cavallerio,* 104 Misc.2d 436, 428 N.Y.S.2d 585 (N.Y.Sup.Ct.1980) (barring retrial where prosecutor intentionally violated a prior court order prohibiting reference to defendant's criminal background and made deliberate comments regarding defendants' failure to take the stand and testify).

However, after considering the totality of circumstances prior to the mistrial, the circuit court determined there was no prosecutorial overreaching. In denying Defendants' motion to dismiss the indictment with prejudice, the court found in relevant part:

> Now, as Mr. Wolff points out, when we began this trial a motion in limine was filed pertaining to various items of other evidence which was recovered in the search of this particular house.
>
> \* \* \* \* \* \*
>
> However, the particular issue relating to this question asked which resulted in the mistrial was not in issue at that time when the motion in limine was heard and ruled upon. As counsel know in this case, particularly through the testimony of Mr. Maxfield, began to uncover or disclose various factual matters which the Court thought unusual regarding the background of the organization of Moore [sic] University and of the kinds of courses and the areas of study that the university offered. I would note that at the beginning of the cross examination [the prosecutor] did delve into these areas and questioned Mr. Maxfield about various courses in regard to sexuality. And we did have a bench conference regarding those matters. And at the end of that discussion Mr. Wolff did withdraw his objection to examination in

> those areas. . . . Mr. Maxfield did indicate that the Steeles, Hannah and Wayne Steele, had left the house in [Hawai'i] and left with so-called bad feelings. And the reference to those bad feelings then was cross examined . . . and ultimately led to this question, this question being the question which led to the mistrial.
>
> Under the circumstances the Court can understand how it is that [the trial prosecutor] reached this question, although it was not a proper question. . . . [T]he Court believes that given the nature of the evidence being elicited at that time, the Court believes that it was carelessness and negligence on the part of [the prosecutor] and that there was no intention to invite an acquittal or to cause denial of the defendants' constitutional right to a fair trial.

Consequently, the circuit court stated that although the "[Prosecutor] was careless and negligent when it asked the improper question which resulted in the mistrial . . . this incident did not amount to a deliberate intent to invite a mistrial or to deny the Defendants Baranco their constitutional right to a fair trial."

Defendants contend, however, that the circuit court erred in concluding that the Prosecutor was "careless and negligent," and maintain that the Prosecutor intentionally asked the improper question to force Defendants into moving for a mistrial. Defendants point out that the Prosecution had possessed the newspaper article for "months" prior to the trial; had highlighted it with a marker; had possessed the article in the courtroom during the cross-examination; and had last read the article on the morning of the cross-examination. In addition, the prosecutor admitted that he had read the article with "some degree of care" such that he noticed it "referred to a person named Allan Steele."

Nevertheless, the circuit court stated in its Findings of Fact that it "accepts [the prosecutor's] testimony that he neglected to check the newspaper article carefully before asking the question which lead [sic] to the mistrial." [5]

---

5. The Prosecution urges that because Defendants fail to challenge the trial court's Findings of Fact

concerning the trial prosecutor's intent, this court should accept the trial court's Findings of

Moreover, the record provides ample evidence to support the trial court's findings. During the hearing on Defendants' motion to dismiss, the Prosecutor testified that "[i]t was a mistake there. It was a slip, and I should have stopped and double checked my notes to make sure." 1/6/93 Transcript (Tr.) at 15. The Prosecutor further stated that "I didn't intend to ask that question, but I asked it anyway. And by the time I asked it, it was too late. But I thought that was the same Steele mentioned in the trial at that time." 1/6/93 Tr. at 25.

Further, the court stated in its Conclusions of Law (COL) that:

> [g]iven the unusual nature of the facts which were elicited regarding the Defendants Baranco and their association with More University and Mr. Maxfield's testimony of the "hard feelings" between the Defendants Baranco and Wayne and Hannah Steele, the Court understands how the State neglected to carefully check the first names of the Steeles before asking its question.

In addition, the record indicates that the Prosecutor actually resisted the motion for mistrial. During the bench conference that followed Defendants' motion for mistrial, the Prosecutor suggested that the court issue a cautionary instruction to the jury, rather than grant a mistrial.

Therefore, while the Prosecutor may have been careless and negligent, we have previously stated that "simple negligence falls far short of the prosecutorial overreaching requisite to the imposition of the double jeopardy prohibition to a retrial." *Pulawa*, 58 Haw. at 384, 569 P.2d at 905–06.

 Finally, Defendants contend that the trial court's COLs misstate the supreme court's opinion in *Hoke*. The court stated in pertinent part:

> 4. In *State v. Hoke*, 69 Haw. 45 [44], 731 P.2d 1261 (1987), the Hawaii Supreme Court held that double jeopardy did not prohibit the retrial of the defendants after

three incidents of alleged misconduct during the trial.

\* \* \* \* \* \*

> 5. In this case, there is no continuing course of misconduct by the State to suggest a deliberate intention to cause a mistrial. Based on the facts and standard set forth in *Hoke*, this Court finds that the State's misconduct in this case does not satisfy the requirements for a dismissal.

Defendants maintain that *Hoke* neither involved "three incidents" of misconduct nor required a "continuing course of misconduct" to prove a deliberate intention to cause a mistrial. Although it appears that the court misconstrued the facts of *Hoke*, the court nevertheless applied the controlling law in this jurisdiction and therefore its error is harmless. *See Matter of Kaohu*, 1 Haw.App. 469, 477, 620 P.2d 1082, 1083 (1980) (holding that if the trial court reached the right conclusion, its decision will not be disturbed on grounds that reasons it gave for its action were erroneous).

### III. *CONCLUSION*

We hold that the circuit court's order denying Defendants' motion to dismiss the indictment with prejudice on double jeopardy grounds was immediately appealable because the order falls within the collateral order exception. Reaching the merits of the appeal, we hold that the circuit court was not clearly erroneous in finding that the Prosecutor did not intentionally provoke Defendants into moving for a mistrial. Accordingly, the circuit court correctly concluded that double jeopardy did not prohibit the retrial of Defendants. We affirm the circuit court's order denying Defendants' motion to dismiss the indictment with prejudice.

Fact as true and controlling pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C). However, it appears that Defendants do challenge this factual finding in the discussion section of their brief.